4 P.3d 130 (2000)
141 Wash.2d 304
STATE of Washington, Petitioner,
v.
Gary ROSS, Respondent.
No. 67996-7.
Supreme Court of Washington, En Banc.
Argued October 28, 1999.
Decided July 27, 2000.
*132 John Ladenburg, Pierce County Prosecutor, Kathleen Proctor, Deputy, Tacoma, for Petitioner.
David William Murdach, Tacoma, for Respondent.
Steinborn & Associates, Jeffrey Steinborn, Seattle, Daniel J. Rodriguez, Tacoma, Amicus Curiae on Behalf of Washington Association of Criminal Defense Lawyers.
*131 MADSEN, J.
The State seeks review of a Court of Appeals decision reversing the conviction of Gary William Ross (Defendant) for manufacture and possession of a controlled substance. At issue is whether a police officer's observation of growing marijuana during a warrantless entry on Defendant's property constituted an unlawful search under the Fourth Amendment, United States Constitution, or article I, section 7 of the Washington Constitution. We find that it did and affirm the Court of Appeals.

Facts
In February 1995, Pierce County Deputy Sheriff John Bananola went to 8310 Woodbourne Road S.W. to investigate an anonymous informant's tip regarding a marijuana grow operation at that location. While there, he saw a blue Chevy Blazer in the driveway and learned that it was registered to the Defendant.
On March 24, 1995, at around 8:30 p.m., Deputy Bananola, along with Deputy Jeff Reigle, returned to Defendant's residence. They were in an unmarked car and wearing street clothes. The house and detached garage are located between two streets running north and south, Luzader Street on the west and Woodbourne Road S.W. curving east at the southeast corner of the property. The property has two entrances. They parked their car along Luzader Street and walked up the driveway to the corner of Defendant's garage. When they reached the corner of Defendant's garage, Deputy Reigle smelled the odor of growing marijuana. Deputy Bananola did not smell marijuana but did notice mold and mildew on the inside of a garage window. Deputy Reigle immediately turned around and started walking back to the car, motioning Deputy Bananola to follow. Later that evening, Deputy Bananola indicated to Deputy Reigle that he did not feel comfortable stating in an affidavit that he had smelled growing marijuana and wanted to double check the garage for evidence of *133 growing marijuana. The deputies returned to the Defendant's residence at 12:10 a.m. and again approached the garage from the driveway on Luzader. They confirmed the smell of marijuana and left without approaching the front door or attempting to contact the residents.
Deputy Bananola filed an affidavit of probable cause and obtained a search warrant which was executed on March 31. Police found growing marijuana plants in the garage and house and packaged cut marijuana in the house. Defendant was charged with unlawful manufacture of a controlled substance and possession of a controlled substance. RCW 69.50.401. Prior to trial, Defendant moved to suppress the evidence on the grounds that the deputies had not been on his property lawfully when they obtained probable cause. The trial court denied the motion, finding that the deputies "were on legitimate business, investigating an allegation of a crime," that they "used the most apparently normal, most direct access route to the house," that Defendant did not have a "reasonable expectation of privacy in the area from which the deputies smelled the growing marijuana," and that "[s]uch area was impliedly open to the public." Clerk's Papers (CP) at 614. The case was tried on stipulated facts and the Defendant was convicted.
On appeal, the Court of Appeals reversed the Defendant's conviction finding that the deputies' initial intrusions onto his property exceeded the scope of an implied invitation. State v. Ross, 91 Wash.App. 814, 819-20, 959 P.2d 1188 (1998). The court relied on the following facts: (1) the discovery was not accidental because the deputies entered Defendant's property specifically to investigate an alleged marijuana grow operation; (2) the deputies acted secretly by going on the property at night, in plain clothes and an unmarked car, and without identifying themselves; and (3) the deputies used a side-entry rather than the most direct access route to the front door, which according to the court would have been from Woodbourne. Ross, 91 Wash.App. at 820, 959 P.2d 1188. This court granted the State's second motion for discretionary review.

Analysis
The first argument raised by the State is that the Court of Appeals improperly reversed the trial court's unchallenged findings of fact. Specifically, the State argues that the court disregarded the trial court's finding that the deputies had used the most direct route to the residence, finding instead that the driveway off Luzader was a side-entrance. Because the Defendant did not assign error to the trial court's finding, the State contends that the Court of Appeals erred when it rejected the unchallenged findings. As the State asserts, unchallenged findings of fact are verities on appeal and an appellate court "will review only those facts to which error has been assigned." State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994).
The Defendant claims that the finding at issue was really a legal conclusion since it was found in the section entitled, "Reasons for the Admissibility of Evidence."[1] Alternatively, he argues that he sufficiently challenged the trial court's factual findings by objecting at the trial court level or that the Court of Appeals was free to review the trial court's factual findings even though he technically failed to assign error in compliance with RAP 10.3(a)(3). He relies on State v. Olson, 126 Wash.2d 315, 893 P.2d 629 (1995).
Turning first to the Defendant's technical argument, even if the trial court had denominated its finding a "conclusion of law," it would nevertheless be a factual finding and this court would review it as such. See Willener v. Sweeting, 107 Wash.2d 388, 394, 730 P.2d 45 (1986). The finding here, that the deputies took the most direct route to the residence, is necessarily a factual question. *134 Moreover, it is a finding that is based on many other factual findings that were so denominated by the trial court.[2] The Defendant did not assign error to any of the supporting factual findings.
As to whether the Defendant's objections in the trial court were sufficient to preserve error for appellate review, the Defendant himself recognizes the requirements of RAP 10.3(a)(3) that appellant's brief contain a "separate concise statement of each error" "together with the issues pertaining to the assignments of error." However, even assuming that Defendant's objections to the trial court sufficiently preserved his challenge to the fact at issue, an appellate court is limited to determining whether the challenged fact is supported in the record by substantial evidence. Hill, 123 Wash.2d at 647, 870 P.2d 313. Here, substantial photographic and testimonial evidence supported the trial court's findings regarding the appearance of the two entrances. In turn, these factual findings support the finding that the deputies used the most direct access route to the Defendant's residence. We agree with the State that the Court of Appeals erred when it rejected the trial court's finding.
Finally, the Defendant's argument that an appellate court may review unchallenged facts in spite of his failure to comply with RAP 10.3(a)(3) is not supported by Olson. In Olson, this court held that the Court of Appeals does not abuse its discretion by considering the merits of an appeal where the appellant's challenge is clear but there are technical flaws in the appellant's compliance with the Rules of Appellate Procedure. Olson, 126 Wash.2d at 323, 893 P.2d 629. The failure to challenge findings of fact is not a technical flaw within the meaning of Olson.
We turn now to the central issue in this case: whether the observations made by Deputy Bananola and contained in the affidavit supporting the search warrant were made in the course of an unlawful search. The Court of Appeals found that the deputy's intrusions exceeded the scope of an implied invitation, thus constituting a search.
The State argues that the Court of Appeals' decision is in conflict with a number of this court's opinions discussing the "open view" doctrine. The State contends that as long as an officer remains in an area that is impliedly open to the public, the officer will not intrude upon a constitutionally protected expectation of privacy unless the officer uses a particularly intrusive method of viewing or observing. Because the deputies here did not depart from an area impliedly open to the public, the State claims, and used only their sense of smell and sight unaided by any enhancement device, they did not invade the Defendant's reasonable expectation of privacy.
The Defendant argues, however, that the police entry onto his property did not satisfy the requirements of the "open view" doctrine. As a result, the officers conducted an unlawful search, the result of which cannot be used to establish probable cause for the issuance of a search warrant.
*135 It is well-established that if information contained in an affidavit of probable cause for a search warrant was obtained by an unconstitutional search, that information may not be used to support the warrant. State v. Johnson, 75 Wash.App. 692, 879 P.2d 984 (1994). The affidavit in support of the warrant in this case relies on the evidence gathered by the deputies during their two entries onto the Defendant's property. The trial court, with the State's agreement, excised from the affidavit Deputy Reigle's allegation that he smelled marijuana when he entered the property at 8:30 p.m. Accordingly, our analysis will be limited to Deputy Bananola's observations. State v. Hoke, 72 Wash.App. 869, 872-73, 866 P.2d 670 (1994).
We begin with the well-recognized principle that warrantless searches are per se unreasonable under both the Fourth Amendment and article I, section 7 of our state constitution unless they fall within a few specifically established and well-delineated exceptions. State v. Myers, 117 Wash.2d 332, 337, 815 P.2d 761 (1991). A person's home has generally been viewed as the area most strongly protected by the constitution. State v. Rose, 128 Wash.2d 388, 391-92, 909 P.2d 280 (1996); State v. Young, 123 Wash.2d 173, 189, 867 P.2d 593 (1994); State v. Chrisman, 100 Wash.2d 814, 820, 676 P.2d 419 (1984) (citing Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). The curtilage of a home is "`so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection.'" State v. Ridgway, 57 Wash.App. 915, 918, 790 P.2d 1263 (1990) (quoting United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)).
As this court stated in State v. Seagull, 95 Wash.2d 898, 902, 632 P.2d 44 (1981), however, "[i]t is clear that police with legitimate business may enter areas of the curtilage which are impliedly open, such as access routes to the house." (Footnote omitted.) An officer with legitimate business, when acting in the same manner as a reasonably respectful citizen, is permitted to enter the curtilage areas of a private residence which are impliedly open, such as access routes to the house. Seagull, 95 Wash.2d at 902, 632 P.2d 44; Rose, 128 Wash.2d at 392, 909 P.2d 280. Under the "open view" doctrine, detection by an officer who is lawfully present at the vantage point and able to detect something by utilization of one or more of his senses does not constitute a search within the meaning of the Fourth Amendment. Seagull, 95 Wash.2d at 901, 632 P.2d 44; Young, 123 Wash.2d at 182, 867 P.2d 593. In Seagull, this court considered a number of facts in determining whether an officer has substantially and unreasonably departed from an area impliedly open to the public or has engaged in a particularly intrusive method of viewing such that the scope of the implied invitation has been exceeded and an unconstitutional search has occurred. Seagull, 95 Wash.2d at 902-03, 632 P.2d 44.
Before reaching the Seagull inquiry, however, the first requirement of the "open view" doctrine must be satisfied. That is: the officer must be conducting legitimate business when he enters the impliedly open areas of the curtilage.
In this case, the trial judge concluded that Deputies Reigle and Bananola "were on legitimate business, investigating an allegation of a crime." CP at 614. In reaching this conclusion, the trial judge considered the 8:30 p.m. and 12:10 a.m. entries together. This was incorrect. Deputy Reigle's observation regarding the smell of marijuana made during the 8:30 p.m. entry was stricken from the affidavit of probable cause, leaving only Deputy Bananola's statement about mold and mildew on the window of the garage which would not support probable cause for a search warrant. To uphold the search pursuant to the warrant then, the State must demonstrate that Deputy Bananola entered the Defendant's property at 12:10 a.m. to conduct legitimate business.
The affidavit of probable cause states that Deputy Bananola did not detect the smell of marijuana during the 8:30 p.m. entry. In testimony, Deputy Reigle stated that he and Deputy Bananola returned to the Defendant's residence at 12:10 a.m. so that Deputy Bananola could confirm the smell of marijuana for purposes of preparing the affidavit *136 of probable cause. Thus, contrary to the dissent's view that the officers were on legitimate police business investigating criminal activity, the officers' purpose was not to investigate criminal activity but to obtain information to prepare the affidavit in order to obtain a search warrant.
In a case very similar to this, State v. Johnson, the Court of Appeals found that Drug Enforcement Agency (DEA) agents were not lawfully on the Defendant's property. There the court observed:
the DEA agents were not using the road merely as a way to gain access to the Johnson's' house. Rather they were using it as the most convenient route on which to trespass on the Johnsons' property. The record demonstrates that the DEA agents never attempted to approach the house or contact the occupants. Indeed, it is obvious that they had no intention of doing so; rather they furtively entered the Johnsons' property under cover of darkness in an apparent effort to look for a marijuana grow operation. Unlike the officers in Seagull and [State v.] Vonhof, [51 Wash. App. 33, 751 P.2d 1221 (1988), review denied, 111 Wash.2d 1010, cert. denied, 488 U.S. 1008, 109 S.Ct. 790, 102 L.Ed.2d 782 (1989),] their only purpose was to conduct a search and gain information by trespassing on private property.
Johnson, 75 Wash.App. at 704-05, 879 P.2d 984. As in Johnson, the deputies here entered the Defendant's property for the express, and sole, purpose of searching for evidence of a marijuana grow operation in order to obtain a search warrant. The deputies entered the property at 12:10 a.m., an hour when no reasonably respectful citizen would be welcome absent actual invitation or an emergency. They had no intention of contacting the Defendant. From the facts presented here we can only conclude that the deputies were not conducting legitimate business when they returned to the Defendant's property at 12:10 a.m. and were, therefore, not lawfully on the property. We conclude that the evidence gathered during the 12:10 a.m. entry must be suppressed.
The remaining question is whether the warrant was nevertheless supported by untainted evidence in the affidavit. Johnson, 75 Wash.App. at 709, 879 P.2d 984. Only Deputy Bananola's observation about mold and mildew on the window of the garage and the anonymous tip remain. An affidavit establishes probable cause for a search warrant if it sets forth facts sufficient to allow a reasonable person to conclude there is a probability that the defendant is involved in criminal activity and evidence of that activity will be found at the place to be searched. Young, 123 Wash.2d at 195, 867 P.2d 593. The untainted information in this case, standing alone, does not establish probable cause. Accordingly, the evidence seized pursuant to the warrant must be excluded. Johnson, 75 Wash.App. at 709, 879 P.2d 984.
The Court of Appeals is affirmed.
SMITH, JOHNSON, and ALEXANDER, JJ., concur.
TALMADGE, J. (concurring).
I agree with the majority's outcome, but I write separately because I fundamentally disagree with the majority's analysis, based as it is on State v. Rose, 128 Wash.2d 388, 909 P.2d 280 (1996). It is time for this Court to establish a principled, predictable, coherent jurisprudence for law enforcement agencies to understand and follow, a jurisprudence more faithful to the dictates of the Fourth Amendment and WASH. CONST. art. I, § 7 in protecting privacy rights. I would overrule Rose.
The majority declares the police in this case were not conducting "legitimate police business" when they entered Gary Ross's property at 12:10 a.m. to gather evidence to establish probable cause to obtain a search warrant. What invalidates the search for the majority is the lateness of the hour and the lack of intention to contact Ross. No "reasonably respectful citizen," the majority tells us, "would be welcome absent actual invitation or an emergency" at that hour. Majority op. at 136. In Rose, however, we approved a similar police intrusion onto a citizen's property that took place at 7:00 *137 p.m., when it was dark.[1] Apparently for the majority, a "reasonably respectful citizen" would be welcome at that hour.
The dissent, on the other hand, is not moved by the time of the police intrusion. For the dissent, so long as the officers were conducting "legitimate police business," they were entitled to be on Ross's property to gather evidence of a crime. Dissent at 139.
Both the majority and dissent fail properly to address the constitutional right of privacy. It is difficult to understand how the majority can know from situation to situation at what hour a particular property owner or leaseholder may deem a total stranger welcome on the property or leasehold. And what standard would the majority establish to guide police behavior? Our right to privacy should not be of such flimsy quality as to depend on what five justices of this Court deem a permissible time of day for police evidence-gathering on private property. The Fourth Amendment and WASH. CONST. art. I, § 7 are made of sturdier stuff.
Our bedrock law declares warrantless searches to be per se unreasonable. See State v. Hendrickson, 129 Wash.2d 61, 70-71, 917 P.2d 563 (1996); State v. Parker, 139 Wash.2d 486, 496, 987 P.2d 73 (1999). We have established some limited exceptions to this rule, but none of those exceptions applies in the present case or applied in Rose. What, then, makes legitimate the police intrusion and search that occurred in Rose? In Rose the intrusion and search were justified because the officers were conducting "legitimate police business." This "legitimate police business" was nothing more than the gathering of evidence of criminal activity. Presumably, if the intrusion and search in the case at bar had occurred at 7:00 p.m. as in Rose instead of 12:10 a.m., the majority, following Rose, would have approved it as "legitimate police business."
But if the police may enter one's property to search for and gather evidence of criminal activity, and such entry is allowable because it is deemed to be "legitimate police business," what is left of our rule that warrantless searches are per se unreasonable? Performing a search on private property to gather evidence of criminal activity with warrant in hand is plainly legitimate police business. Performing an open-ended search on private property to gather evidence of criminal activity without a warrant is unconstitutional and is not legitimate police business.
The analysis must center on the definition of "legitimate police business." We first employed the phrase in the context of search and seizure law in State v. Seagull, 95 Wash.2d 898, 632 P.2d 44 (1981). There a police officer was canvassing a neighborhood seeking information about an abandoned vehicle with a broken window and bloodstains. Seagull's house was the third one he visited. Id. at 900, 632 P.2d 44. "His purpose was to question the occupants about the abandoned vehicle and its occupants." Id. at 902 n. 1, 632 P.2d 44. While traversing Seagull's property to reach the entrance to Seagull's house, the officer thought he saw a marijuana plant in a greenhouse. He left immediately without contacting Seagull and the next day obtained a search warrant. A search of the premises turned up 60 marijuana plants in the greenhouse, and marijuana and paraphernalia in Seagull's house. Id. at 900, 632 P.2d 44.
The officer in Seagull was unquestionably on legitimate police business, as the trial court found. Id. at 902 n. 1, 632 P.2d 44. He entered Seagull's property not to search for evidence of a crime or even to contact Seagull as a possible suspect. He entered only to find out information about the abandoned car. The officer was engaging in a community caretaking function.[2] He was entitled to be where he was and what he discovered was in open view. The legitimate police *138 business was, in fact, community caretaking, for which no warrant is ever necessary. Thus, we add precision to the definition of legitimate police business if we equate it with a recognized community caretaking function. The police may enter one's property without a warrant in furtherance of community caretaking. They may not enter without a warrant to search for evidence of a crime. "Knock and talk" procedures are another legitimate justification for police to be on private property.
In State v. Ferrier, 136 Wash.2d 103, 960 P.2d 927 (1998), we approved of police "knock and talk" procedures so long as the police informed a resident she does not have to consent to the entry of her home. "Knock and talk" procedures are legitimate consensual contacts between police and occupants of homes, and the police may enter private property to conduct them. In doing so, however, they must observe our strictures about not exceeding the narrow scope of the consensual contact between the police and the public by wandering away from the most direct path to the front door. See Rose, 128 Wash.2d at 395-96, 909 P.2d 280. By definition, a "knock and talk" procedure is not a search for evidence unless the owner consents to such a search.
While "knock and talk" procedures are legitimate, we should reject any notion that police on police business have an implied invitation to invade one's curtilage to perform a search for evidence so long as they act like "reasonably respectful citizens." A law enforcement officer conducting law enforcement business is not the same as a neighbor wanting to borrow a cup of flour, or an express package delivery person delivering something, or a neighborhood child running across the lawn. A law enforcement official is an agent of the state who comes onto a person's property to conduct official business, business that may result in a person's arrest and incarceration. There is certainly no implied invitation for that. Surely Seagull, had she known a police officer was about to enter her property would have refused him entry, knowing she had contraband in open view. The rationale for the police to enter private property without a warrant should be narrowly grounded in community caretaking and consensual contacts between the police and the public, not in an expansive notion of "legitimate police business" that includes warrantless searches for evidence of a crime.
In summary, the first principle is warrantless searches are per se unreasonable. Police may enter private property without a warrant, however, under the aegis of community caretaking or for the narrow purpose of speaking with home occupants, as in "knock and talk" procedures.[3] When the police enter private property, they must restrict the scope of their travel on the property so as not to invade the privacy of the resident. If the police enter property to search for evidence of a crime without a warrant, the fruits of any such search should be inadmissible.
Rose and the majority's approach here permit warrantless searches in violation of the constitutional right of privacy. I would overrule Rose and decide the present case pursuant to the analysis I have set forth above. The search in this case was illegal because the police were on Ross's property without a warrant for the express purpose of gathering evidence of a crime.
SANDERS, J., and WINSOR, J.P.T., concur.
IRELAND, J. (dissenting).
The defendant, Gary Ross, a Tacoma attorney, seeks suppression of evidence of the marijuana grow operation at his home. He claims that the information for probable cause which justified the search warrant was obtained by an illegal search. On the facts of this case, the officers' entry onto Ross's property to seek probable cause information did not constitute an unconstitutional warrantless search. The deputies entered Ross's property for a legitimate purpose. They detected the smell of marijuana while in an impliedly open area. They did not depart from the impliedly open area, and they did not use a particularly intrusive *139 method of viewing or observing. Thus, the Court of Appeals should be reversed.
Under the open view doctrine, the first two requirements are that (1) the officers were conducting legitimate police business when they discovered probable cause evidence; and (2) their detection of such evidence occurred from a vantage point that was impliedly open to the public. See State v. Rose, 128 Wash.2d 388, 392, 909 P.2d 280 (1996) (an officer's detection of something by utilizing his senses from a vantage point where he is lawfully present does not constitute a search); State v. Seagull, 95 Wash.2d 898, 901, 632 P.2d 44 (1981).
The majority incorrectly concluded that the officers were not conducting legitimate police business when they entered Ross's property to confirm the smell of marijuana.[1] Washington courts have found that officers are conducting legitimate police business when they approach a residence to investigate suspected criminal activity of the occupant and to look for evidence.[2] Here the deputies entered Ross's property to investigate an informant's tip about a marijuana grow operation-a legitimate police purpose.[3]
The majority relies on State v. Johnson, a Court of Appeals case where evidence was suppressed when Drug Enforcement Agency (DEA) agents did not intend to approach the house or contact the occupants during their drug investigation. Johnson, 75 Wash.App. 692, 704-05, 879 P.2d 984 (1994). However, this Court has held that "an officer's underlying intent or motivation is irrelevant to the judicial inquiry into the lawfulness of the officer's conduct". State v. Maxfield, 125 Wash.2d 378, 399 n. 39, 886 P.2d 123 (1994) (citing State v. Petty, 48 Wash.App. 615, 740 P.2d 879 (1987)), rev'd on other grounds, In re Personal Restraint Petition of Maxfield, 133 Wash.2d 332, 945 P.2d 196 (1997). In Petty, when an officer stood in an area which was not constitutionally protected and smelled marijuana, the court held "that detection did not constitute a search within the meaning of the Fourth Amendment or article 1, section 7." Petty, 48 Wash.App. at 620-21, 740 P.2d 879 (footnote omitted).
In any event, Johnson is not "very similar" to the instant case as the majority contends. In Johnson, the access way used by the drug enforcement agents was not impliedly open. Johnson's property was accessible only by a dirt road that ran through a park; the buildings on the property were not visible from the property boundary, which was marked by a closed gate and signs reading "Private Property" and "No Trespassing." Johnson, 75 Wash.App. at 696, 705, 879 P.2d 984.
Although generally the direct access way to a residence is impliedly open to the public,[4] such an access route may not be impliedly open depending upon the particular facts and circumstances of each case. State v. Hoke, 72 Wash.App. 869, 874, 866 P.2d 670 (1994) (citing Seagull, 95 Wash.2d at 903, 632 P.2d 44). Relevant factors include the degree to which the residence is isolated from the road and neighbors; the presence of *140 fences, gates, guard dogs, "No Trespassing" or "Private Property" signs that manifest a subjective expectation of privacy; and the time of the officers' intrusion. Johnson, 75 Wash.App. at 705-06, 879 P.2d 984; State v. Ridgway, 57 Wash.App. 915, 918-19, 790 P.2d 1263 (1990). No one factor is dispositive, but together such factors can establish that an access route is not impliedly open. Johnson, 75 Wash.App. at 706, 879 P.2d 984.
In the instant case, unlike in Ridgway and Johnson, Ross's home was not in an isolated rural setting. The view of his home was unobstructed from Luzader Street, and his property was surrounded by neighboring residential lots. There were no warning signs or dogs that manifested an expectation of privacy. Although a fence enclosed Ross's yard, it was low and did not shield his home from view. Further, the officers did not go inside the gate, but rather stayed outside the fence on the driveway and direct access route along the garage. Although the officers entered Ross's property at 12:10 a.m., this factor alone is not enough to find that the access route to his home was not impliedly open. See Rose, 128 Wash.2d at 396-99, 909 P.2d 280 (where officer was conducting legitimate police business from an impliedly open vantage point, the mere fact of darkness did not transform the officer's observation into a search even though a flashlight was used).
Because the first two inquiries of the open view doctrine are satisfied, it is necessary to reach the following Seagull inquiry:
Did the officers substantially and unreasonably depart from the area impliedly open to the public? No. The officers did not depart from an impliedly open area; they remained on the direct access route to Ross's residence at all times.[5] Did the officers engage in a particularly intrusive method of viewing or observing such that they exceeded the scope of an implied invitation? No. They detected the presence of marijuana using their unaided senses of sight and smell.
Thus, their detection of probable cause evidence did not constitute an unconstitutional search. The deputies' conduct was lawful, and their observations were properly used to establish probable cause for the issuance of the search warrant.
GUY, C.J., concurs.
NOTES
[1] Contributing to the confusion is the trial court's treatment of the facts in State v. Seagull, 95 Wash.2d 898, 632 P.2d 44 (1981), as factors used to determine whether the officer has exceeded the scope of an implied invitation. As this court noted in Seagull, "[w]hat is reasonable cannot be determined by a fixed formula. It must be based on the facts and circumstances of each case." Id. at 903, 632 P.2d 44 (quoting Ker v. California, 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)).
[2] Specifically, the trial court found that (1) a shrub on the street side of the Woodbourne Rd. S.W. gate had grown to partially overlap such gate; (2) the grass on the street side of such gate revealed no path to such gate; (3) the grass on the street side of the Woodbourne Rd. S.W. gate was brown and yellow and nonmaintained; (4) there was minimal light in the area of Woodbourne Rd. S.W. gate, all from neighbors' lights; (5) the view of the Defendant's house from the front fence was largely concealed by a large hedge, approximately 12 feet in height; (6) the Defendant's house was minimally visible around the hedge from the Woodbourne Rd. S.W. gate vantage point; (7) the Defendant's detached garage and house were clearly visible from Luzader Street with minimal obstructions; (8) the driveway was gravel and directly connected to a walkway made of the same gravel material as it went past the detached garage and through the fence line via the Luzader Street gate; (9) the gravel walkway continued perpendicularly in a direction away from Luzader Street, along the front of the house, leading to the Defendant's front door and porch, where it then ended; (10) the area around the garage door is not enclosed and is easily accessible to the public or anyone approaching the front door; (11) the floodlight attached to the corner of the garage faced diagonally across the front of the garage and toward the Luzader Street gate, and illuminated part of the gravel driveway and walkway; (12) the residence is situated in such a way that for a person parking on Luzader, the front door is most accessible by walking past the garage. Clerk's Papers at 614-15.
[1] The search in Rose took place on November 18, 1991. At that time of year, sunset in Snohomish County occurs at 4:28 p.m., and civil twilight ends at 5:02 p.m.
[2] Earlier, we said "the [United States Supreme] Court sanctioned the impoundment of an abandoned, illegally parked vehicle as falling within the `community caretaking functions' of the police." State v. Houser, 95 Wash.2d 143, 152, 622 P.2d 1218 (1980). Police procedures to deal with abandoned cars come under the community caretaking function of law enforcement officials.
[3] I do not understand the dissent's contention that I would eliminate "knock and talk" procedures. See Dissent at 139 n. 1. I would adhere to Ferrier.
[1] In our view, to follow the concurrence would be to eliminate all "knock and talk" procedures unless a "knock and talk" had been scheduled by prior appointment and with the permission of the resident.
[2] See, e.g., Rose, 128 Wash.2d at 390, 393, 909 P.2d 280 (officer entered defendant's property to investigate landlord's report that he could smell marijuana coming from a shed); State v. Gave, 77 Wash.App. 333, 335, 338, 890 P.2d 1088 (1995) (officers entered defendant's property to investigate a tip from the Drug Enforcement Agency that there was a marijuana grow operation at the residence); State v. Hornback, 73 Wash.App. 738, 740, 743-44, 871 P.2d 1075 (1994) (officers drove up defendant's driveway to investigate an informant's tip that defendant was growing marijuana; one of their purposes was to check for the smell of marijuana); State v. Petty, 48 Wash.App. 615, 616, 619, 740 P.2d 879 (1987) (officer entered defendant's property to confirm informant's information regarding marijuana grow operation).
[3] The concurrence characterizes our position as supporting an "open-ended" search to gather evidence of criminal activity. We take no such position. We would restrict an officer entering private property for an investigative purpose to approaching the front door by a direct route and to remaining in impliedly open areas.
[4] See State v. Seagull, 95 Wash.2d at 902, 632 P.2d 44; Gave, 77 Wash.App. at 337, 890 P.2d 1088 (areas of the curtilage impliedly open to the public include a driveway, walkway, or access route leading to the residence or to the porch of the residence).
[5] Compare with Rose, 128 Wash.2d at 393 n. 2, 909 P.2d 280 (stating that an officer's deviation to an area in back of a home was immaterial in assessing the validity of his subsequent view from the front porch).