[No. 31637-4-II. Division Two. March 15, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. WALTER JAMES BOETHIN, *Appellant*.

*Steven W. Thayer*, for appellant.

*Arthur D. Curtis*, *Prosecuting Attorney*, and *Thomas C. Duffy*, *Deputy*, for respondent.

¶1 MORGAN, A.C.J. — In this prosecution for unlawfully manufacturing marijuana, Walter James Boethin appeals

the trial court's denial of his motion to suppress evidence. We reverse.

¶2 In February 2003, Boethin owned a home at 2610 NW 199th Street. The home is in a rural area about 125 yards from the public street. The neighbors' homes are 70 to 75 yards away and not visible through the trees. The property is secluded, and it was uncommon to have visitors.

¶3 One accesses the property by turning north from the public street and traveling along a gravel driveway. As one approaches the home itself, the driveway becomes paved and gradually widens to encompass much of the front of the house.

¶4 The home's front door faces south. So do its two garage doors. The west edge of the west garage door is a little less than 20 feet east of the front door. The front door is above ground level and is reached by ascending several stairs. The front door and the garage doors were closed at all times material here.

¶5 At the times pertinent here, a woodpile existed in front of the east side of the west garage door. A BMW vehicle was parked in the paved driveway area, just southwest of the woodpile. A boat was parked in front of the easterly part of the garage doors, and a pickup truck was parked just south of the boat.

¶6 At 2:30 P.M. on February 27, 2003, Detectives Edward Alba and Michael Johnson arrived at the home to investigate a suspected indoor marijuana grow operation. Although they did not have probable cause or a warrant, they planned to knock, talk with whoever came to the door, and, while doing that, try to smell marijuana. They parked in the southerly part of the driveway's pavement and approached the front steps by walking diagonally and to their left (in a northwesterly direction). When they reached the steps, Johnson ascended to the front door, knocked, and waited for a response.

¶7 While Johnson was waiting at the front door, Alba left the area of the stairs and walked more than 20 feet to the

east edge of the western garage door. His purpose was to see if he could smell marijuana in the garage. Having walked between the house and the BMW, and between the house and the woodpile, he put his nose within two inches of the garage door seam, sniffed, and smelled marijuana.

¶8 Meanwhile, Johnson was still waiting for a response at the front door. When Alba said that he had smelled marijuana, Johnson walked to where Alba had sniffed, put his nose "a couple of inches" from the crack, and also smelled marijuana. No one ever did come to the front door.

¶9 Based on the smell emanating from the garage, the officers obtained a search warrant. When they served it, they found that the garage contained 22 growing marijuana plants and 11 pounds of cut marijuana.

¶10 The State charged Boethin with manufacturing marijuana. He moved to suppress, but the trial court denied his motion. Following a bench trial on stipulated facts, he was convicted and sentenced to 30 days in jail, with work release if he qualified.

¶11 Boethin argues on appeal that he was "disturbed in his private affairs . . . without authority of law." He cites and relies on Washington Constitution, article I, section 7, which provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

¶12 A police officer may enter areas around a home that are impliedly open to the public, such as an access route or walkway leading up to the home.[1] If while in those areas he or she "is able to detect something by utilization of one or more senses," he or she does not conduct an unlawful search.[2] But if he or she substantially and unreasonably

---

[1] *State v. Ross*, 91 Wn. App. 814, 818, 959 P.2d 1188 (1998), *aff'd*, 141 Wn.2d 304, 4 P.3d 130 (2000).

[2] *State v. Seagull*, 95 Wn.2d 898, 901, 632 P.2d 44 (1981). Although this case interprets the fourth amendment to the United States Constitution, the Washington State Supreme Court has applied its holding to cases interpreting article I, section 7 of our state constitution. *State v. Vonhof*, 51 Wn. App. 33, 751 P.2d 1221, *review denied*, 111 Wn.2d 1010 (1988), *cert. denied*, 488 U.S. 1008 (1989).

departs from such areas, he or she does conduct an unlawful search.[3] He or she may intrude to the same extent as a reasonably respectful citizen,[4] but not to a greater extent, and the extent to which a reasonably respectful citizen may intrude depends on the facts and circumstances of each case.[5]

¶13 In *State v. Seagull*,[6] an officer approached a house in daylight. His purpose was to ask the occupants about a vehicle abandoned in their neighborhood. After initially going to the south door, he went around the house to its north door. On his way, he walked within 10 feet of a greenhouse and saw a marijuana plant. He did not conduct an unlawful search because he deviated only slightly from the most direct route between the two doors, he was engaged in an honest attempt to talk to the home's occupants, and he observed the marijuana inadvertently.

¶14 In *State v. Vonhof*,[7] a tax appraiser smelled marijuana while inspecting a shop building that was not on the tax rolls and had never been appraised. He did not conduct an unlawful search because he had a statutory right to enter and inspect the property, he entered in the daytime, he did not intrude into the building, and he smelled the marijuana inadvertently.

¶15 In *State v. Rose*,[8] an officer saw marijuana while standing on the front porch of a home and shining his flashlight through a front window. He did not conduct an unlawful search because the front porch was impliedly open to the public and, like any other member of the public, the officer was free to keep his eyes open while there.

---

[3] *State v. Myers*, 117 Wn.2d 332, 345, 815 P.2d 761 (1991); *Seagull*, 95 Wn.2d at 903.

[4] *Seagull*, 95 Wn.2d at 902-03.

[5] *Seagull*, 95 Wn.2d at 903.

[6] 95 Wn.2d 898, 905, 632 P.2d 44 (1981).

[7] 51 Wn. App. 33, 751 P.2d 1221 (1988).

[8] 128 Wn.2d 388, 909 P.2d 280 (1996).

¶16 In this case, by way of contrast, Alba and Johnson went to the house for the purpose of detecting marijuana. After approaching the front door as any reasonably respectful citizen would have done, and even though they had not yet observed any criminal activity, they traversed the distance from the stairs to the garage doors, put their noses against the crack between those doors and the wall and smelled marijuana. In doing that, they deviated substantially from what a reasonably respectful citizen would have done, and they intruded into "private affairs" without authority of law within the meaning of article I, section 7.

¶17 Having held that the officers' olfactory observations of marijuana were unlawful, we next inquire whether the remainder of the information in the search warrant affidavit shows probable cause. It clearly does not. Accordingly, the marijuana must be suppressed, and the case must be dismissed.

¶18 Reversed with directions to dismiss.

HOUGHTON and ARMSTRONG, JJ., concur.