Judge ALLARD,
writing for the Court.
Shortly after midnight, acting on an anonymous tip, two Alaska state troopers drove up Margaret A. Kelley's driveway to her residence in Willow, Alaska, rolled down the windows of their idling patrol car, and sniffed the air. After detecting the odor of marijuana, the troopers obtained a warrant to search Kelley's home. During that search they discovered and seized evidence of a commercial marijuana grow.
For the reasons explained here, we conclude that the troopers had no legal right to approach Kelley's home at that time of night, in the manner that they did, to gather evidence of a marijuana grow. Kelley is therefore entitled to suppression of the evidence obtained as a result of this illegal search.
Facts and proceedings
Margaret Kelley's home is located at mile 85.5 of the Parks Highway. The residence is rural, set back a considerable distance from the highway, and there are no neighbors close by.
On June 30, 2009, at 12:30 a.m., Sergeant Robert Langendorfer and Investigator Kyle Young drove onto Kelley's property to investigate an anonymous tip that she was growing marijuana to sell.[1] The troopers drove up the driveway and parked their patrol car directly in front of Kelley's house, leaving the engine idling for several minutes. The troopers made no effort to contact the occupants of the residence. Instead, they rolled down the windows of their patrol car and sniffed the air. According to the later search warrant application, they were able to detect the odor of growing or recently harvested marijuana.
Further investigation revealed that Kelley owned the property but that her electrical usage was "unremarkable"-that is, not indicative of a commercial grow operation. Nevertheless, the troopers obtained a warrant to search the property. When they executed the warrant, they discovered numerous marijuana plants and other evidence of a commercial grow operation. Based on this evidence, the State charged Kelley with four counts of fourth-degree misconduct involving a controlled substance.[2]
Kelley moved to suppress the evidence obtained during the search of her home, arguing that the officers unlawfully intruded onto her property when they drove up her driveway after midnight to sniff for narcotics. The trial court denied the motion, ruling that the driveway to Kelley's house was impliedly open to public use because it provided public ingress to and egress from her property, and that the troopers therefore had a right to be there, even after midnight. The court reasoned that "[a] way of ingress or egress does not cease to exist after a certain time of night."
Kelley was then convicted in a bench trial on stipulated facts, and she appealed her conviction to this Court. While her appeal was pending, the United States Supreme Court issued its decision in Florida v. Jar-dines.[3] Because Jardines spoke to the pro-priecty of this type of police approach to residential premises, we directed the parties to submit supplemental briefing addressing the case.
We have received that briefing, and we now resolve Kelley's appeal.
Why we conclude that the troopers' conduct was unlawful and that the evidence obtained during the search of Kelley's home must be suppressed
Under the Fourth Amendment to the United States Constitution and Article 1, Section 14 of the Alaska Constitution, a war-rantless search of a home is illegal in the absence of exigent cireumstances. This pro *1014 tection against unreasonable searches also extends to the curtilage of the home-those areas immediately surrounding the home in which the resident retains a reasonable expectation of privacy.[4]
However, law enforcement officers may enter an area within the curtilage of a home that is "expressly or impliedly opened to the public use."[5] More specifically, "if police utilize normal means of access to and egress from the house for some legitimate purpose, such as to make inquiries of the occupant, ... it is not a Fourth Amendment search for the police to see or hear or smell from that vantage point what is happening inside the dwelling."[6] Thus, in Pistro #. State, our supreme court held that a police officer could lawfully drive up a driveway and observe stolen property in plain view through the window of the homeowner's garage.[7]
Until now, we have not had occasion to address whether this "public access" exception to the warrant requirement applies to a middle-of-the-night entry into the curtilage of a home.
In Jardines, the United States Supreme Court recognized that a police officer has an implicit license to approach a home without a warrant and knock on the front door because this is "no more than any private citizen might do."[8] But the Supreme Court also recognized that the scope of this implicit license is limited not only to the normal paths of ingress and egress, but also by the manner of the visit. As the Court explained, "[to find a visitor knocking on the door is routine {even if sometimes unwelcome); to spot that same visitor exploring the front path with a metal detector, or marching his bloodhound into the garden before saying hello and asking permission, would inspire most of us to-well, call the police."[9]
Thus, in the majority opinion in Jardines, the Supreme Court concluded that the police did not have an implicit license to walk uninvited onto the front porch of a home with a drug-sniffing dog, and the Court therefore upheld the Florida Supreme Court's decision suppressing the evidence obtained as a result of that search.[10]
The case before us involves a trooper sniff," not a dog sniff,[11] and the troopers stayed in their car rather than stepping up onto the porch. But, in another respect, the search in this case was more intrusive than the search in Jardines, because it took place after midnight.
Although a late-night search was not before the Court in Jardines, both the majority and the dissent in Jardines were in agreement that there were clear temporal limits on the implied license for public access to a private residence. As Justice Alito noted in the dissent, a visitor may not "come to the front door in the middle of the night without an express invitation"; indeed, such a late-night intrusion "could be cause for great alarm."[12] The majority referred approving *1015 ly to the dissent's "no-night-visits rule," noting that "the typical person would find it 'a cause for great alarm' (the kind of reaction the dissent quite rightly relies upon to justify its no-night-visits rule ...) to find a stranger snooping about his front porch with or without a dog."[13]
Before and after Jardines, courts in other jurisdictions have similarly condemned late-night police incursions onto private property, holding that they are generally outside the seope of the implied license for public access.[14]
In State v. Ross, for example, the Washington Supreme Court held that law enforcement agents conducted an illegal search when they approached a homeowner's garage shortly after midnight "for the express, and sole, purpose of searching for evidence of a marijuana grow operation in order to obtain a search warrant." [15] In finding the entry unlawful, the Washington Supreme Court emphasized that "[the deputies entered the property at 12:10 am., an hour when no reasonably respectful citizen would be welcome absent actual invitation or an emergen-ey."[16]
Similarly, in Commonwealth v. Ousley, the Kentucky Supreme Court held that a middle-of-the-night police intrusion onto the curti-lage of a home to search a garbage can violated the Fourth Amendment.[17] Noting that "the time of the day of the invasion matters," the court held that "just as the police may invade the curtilage without a warrant only to the extent that the public may do so, they may also invade the curtilage only when the public may do so."[18]
Here, the record shows (and the State does not dispute), that the troopers entered the constitutionally protected curtilage of Kelley's home when they drove down her private driveway and parked their car directly in front of Kelley's home.[19] The record also shows (and again, the State does not dispute), that the purpose of this midnight visit was to gather evidence related to the anonymous tip that Kelley was growing marijuana to sell.
There is no allegation that the troopers had prearranged business with Kelley, that they were expecting or intending to have direct contact with her, or that any exigency existed that otherwise justified their conduct. Nor is there any evidence that Kelley impliedly consented to the arrival of visitors after midnight-by, for instance, operating a night-time business from her home or hosting a large, late-night social gathering.[20] In *1016 deed, the State has articulated no reason to justify the troopers' decision to conduct this investigation after midnight instead of during the day, when the investigation would have accorded with the conduct of a respectful citizen and well-settled law.
In urging us to uphold the search, the State emphasizes that, in Alaska in midsummer, it is still light out at 12:30 a.m. But the law's aversion to nighttime searches is not based on the time of sunset, which varies by season, but on the widely recognized right of the individual to privacy and repose in the home at night.[21] We note that in deference to this right, Alaska law requires a search warrant to be executed between the hours of 7:00 am. and 10:00 p.m., regardless of the season, unless there is good cause to execute the search at some other hour.[22]
In his dissent, Senior Judge Coats observes that a number of courts have upheld late-night police approaches to residences for the purpose of conducting a "knock and talk" with the occupants. But the legal principles that govern a "knock and talk" do not apply here, because the State never asserted, and the record does not show, that the troopers approached Kelley's residence to engage in a knock and talk. As the Kentucky Supreme Court noted in Ous-ley, "[wlhere the officer seeks only to search and does not interact with the resident, he has no 'legitimate' purpose as understood in the knock-and-talk cases.[23]
We further note that the knock-and-talk cases cited by the dissent recognize that the lateness of the hour is an important factor to be considered in assessing the overall coer-civeness and lawfulness of a knock and talk.[24] Here, we reach our conclusion that the troopers' conduct violated the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Alaska Constitution based on all of the cireumstances of this case-including the time of night, the troopers' conduct, the State's failure to advance any reason why the troopers could not gather their evidence during the day, or to believe that Kelley impliedly consented to such a late-night visit.
The dissent also suggests that our decision will hamper legitimate night-time police investigations. We disagree. Nothing in our decision bars the police from approaching a residence late at night when they have good reason to do so.[25] Likewise, nothing in our decision-or in Jardines-bars the police from using the normal means of ingress or egress to approach a residence, even in the absence of an invitation or exigent cireum-stances, provided that the manner and time in which they do so is consistent with the: conduct of an ordinary, respectful citizen.[26]
The search warrant in this case was based almost entirely on the evidence obtained by the troopers' midnight entry onto Kelley's property. Because the troopers were not in a place where they had a legal right to be when they conducted the sniff, the search warrant they obtained is tainted by the illegal search, and the evidence obtained as a result of the warrant must be suppressed.[27]
Conclusion
We REVERSE the judgment of the superior court.

. The record provides no details about the nature of the tip or when it was received.

. AS 11.71.040(a)(2); AS 11.71.040(a)(3)(F) & (G); AS 11.71.040(a)(5).

, --- U.S. --, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).

. See Ingram v. State, 703 P.2d 415, 427 n. 10 (Alaska App.1985) (citing Oliver v. United States, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)).

. Pistro v. State, 590 P.2d 884, 886 (Alaska 1979).

. Wallace v. State, 933 P.2d 1157, 1164 (Alaska App.1997) (quoting 1 Wayne R. LaFave, Search and Seizure § 2.3(c), at 482-83 (3d ed.1996)) (internal quotation marks omitted).

. Pistro, 590 P.2d at 885-88.

. Jardines, 133 S.Ct. at 1416 (quoting Kentucky v. King, -- U.S. -, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011)).

. Id.

. Id. at 1416-18; see also id. at 1418-20 (Ka-gan, J., joined by Ginsburg and Sotomayor, JJ., concurring).

. See Wallace, 933 P.2d at 1165 (noting that there is no reasonable expectation of privacy from a trooper with "inquisitive nostrils" provided that the trooper is lawfully where he is entitled to be) (quoting 1 Wayne R. LaFave, Search and Seizure, § 2.2(a) at 403 (3d ed.1996)).

. Id. at 1422 (Alito, J., joined by Roberts, C.J., and Kennedy and Breyer, JJ., dissenting) (citing State v. Cada, 129 Idaho 224, 923 P.2d 469, 478 (App.1996) ('"Furtive intrusion late at night or in the predawn hours is not conduct that is expected from ordinary visitors. Indeed, if observed by a resident of the premises, it could be a cause for great alarm")).

. Id. at 1416 n. 3 (emphasis in original).

. See, eg., United States v. Lundin, 47 F.Supp.3d 1003, 1012-13 (N.D.Cal.2014) ("[The implied license to visit is generally understood to extend during daylight hours."); State v. Cada, 129 Idaho 224, 923 P.2d 469, 478 (App.1996) (police officers' nighttime intrusion "exceeded the scope of any implied invitation to ordinary visitors and was not conduct to be expected of a reasonably respectful citizen"); People v. Burns, 389 Ill.Dec. 218, 25 N.E.3d 1244, 1253-54 (Ill. App.2015) (condemning warrantless use of drug-detection dog to sniff apartment front door at 3:20 a.m.); Commonwealth v. Ousley, 393 S.W.3d 15, 31 (Ky.2013) (midnight intrusion by police on homeowner's driveway unconstitutional because "[albsent an emergency, such as the need to use a phone to dial 911, no reasonable person would expect the public at his door at [that] time{ ]"); State v. Ross, 141 Wash.2d 304, 4 P.3d 130, 136 (2000) (suppressing evidence where police used driveway to enter property at 12:10 a.m. to search for evidence of marijuana grow, with no intention of contacting defendant); State v. Johnson, 75 Wash.App. 692, 879 P.2d 984, 991-93 (1994) (noting that danger of "violent confrontation" considerably heightened during 1:00 a.m. intrusion).

. Ross, 4 P.3d at 136.

. Id.

. Ousley, 393 S.W.3d at 31.

. Id.; see also id. at 30 ("Girl Scouts, pollsters, mail carriers, door-to-door salesmen just do not knock on one's door at midnight; and if they do, they are more likely to be met by an enraged (and possibly armed) resident than one with a welcoming smile.").

. See Jardines, 133 S.Ct. at 1415 (defining curti-lage as area "immediately surrounding and associated with the home"). ©

. The dissent notes that some part of Kelley's driveway was shared with a business. This assertion appears only in the search warrant affidavit, and was never mentioned or relied on by the State in response to Kelley's motion to suppress. As we noted earlier, the State did not dispute Kelley's characterization of her home as "rural in character" and "not close to any adjacent neighbors."

. See State v. Witwer, 642 P.2d 828, 833 (Alaska App.1982) (noting that a nighttime search is a "greater violation of privacy" than a daytime search).

. Alaska R.Crim. P. 37(a)(3)(C).

. Commonwealth v. Ousley, 393 S.W.3d 15, 30 (Ky.2013).

. See Fern L. Kletter, Construction and Application of Rule Permitting Knock and Talk Visits Under Fourth Amendment and State Constitutions, 15 ALR. 6th 515, § 2 (2006).

. See, eg., United States v. McDowell, 713 F.3d 571, 572-74 (10th Cir.2013) (affirming denial of suppression motion based on evidence obtained from nighttime driveway sniff where police were on the property because they were attempting to locate suspect in assault investigation).

. Accord Florida v. Jardines, - U.S. -, 133 S.Ct. 1409, 1415, 185 L.Ed.2d 495 (2013) ("Complying with the terms of [the implied license for public access] does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters.").

. See Chandler v. State, 830 P.2d 789, 796 (Alaska App.1992).