119 P.3d 359 (2005)
STATE of Washington, Respondent,
v.
Peter T. LITTLEFAIR, Appellant.
No. 31244-1-II.
Court of Appeals of Washington, Division 2.
August 3, 2005.
Publication Ordered September 7, 2005.
*361 George A. Kolin, Attorney at Law, Washougal, WA, for Appellant.
Adam Nathaniel Kick, Skamania Co. Pros. Attorney, Stevenson, WA, for Respondent.
BRIDGEWATER, J.
¶ 1 Peter T. Littlefair appeals his convictions for manufacture of a controlled substance  marijuana, and possession of marijuana with intent to deliver. We reverse, finding that the officers unconstitutionally obtained the information supporting the search warrant by surreptitiously entering onto the defendant's property. Thus, the evidence must be suppressed, the case dismissed, and the judgment and sentence vacated.

A. General History
¶ 2 The State charged Peter Littlefair on March 1, 1996, with manufacture of a controlled substance-marijuana and possession with intent to deliver a controlled substance-marijuana. Detective Arne Gonser conducted surveillance on January 23, January 24, March 23, May 12, June 13, and December 27, 1995. While conducting the surveillance on December 27, Detective Gonser and Reserve Officer Will Harryman smelled a strong odor of green growing marijuana emanating from a venting system in some unknown type of underground container. Detective Gonser was 20 feet away from the underground container hidden by barrels when he smelled the marijuana.
¶ 3 The officers obtained a search warrant on December 28, to search Littlefair's property. When the officers executed the search, they discovered a 40-amp breaker located inside the breaker box in the back bedroom of the main residence. The breaker was the power source for the underground container. The officers also observed that someone had tampered with the electrical meter and power was being bypassed.
¶ 4 Also located on the property were outbuildings and a camper trailer. Inside of these buildings police found 21 marijuana starter plants, dried marijuana, two firearms, paperwork addressed to Littlefair, and Littlefair's identification.
¶ 5 Inside the buried container, officers found four marijuana plants along with a homemade lightshield, a transformer, a 1000-watt halide light bulb, a heater, fans, timers, scales, packing material, water drums, a marijuana smoking pipe, an SKS 7.62 assault rifle, and several thousand rounds of ammunition. The officers also found a Stuart Hall Executive notebook containing notes pertaining to the grow operation. Those notes discussed watering, fertilizing, and insecticide for the plants.

B. Procedural History
¶ 6 Littlefair moved to suppress and dismiss the action on March 27, 1996. He filed a brief in support of his motion on August 16. On August 27, the State filed a brief in opposition to Littlefair's motion. On August 26, Littlefair moved for a Franks[1] hearing. The State filed its brief in opposition to the motion on August 28. The court held a suppression hearing on August 29.
¶ 7 At the hearing, Littlefair testified that in 1983 he had purchased two acres of property at the end of Gordon Road in Stabler, Washington. At the end of the intersection of Foster and Gordon Road there was a sign that stated "Gordon Road Private." 1 Report of Proceedings (RP) (Aug. 29, 1996) at 4. Littlefair also stated that Gordon Road was *362 posted with "Private Property" and "No Trespassing" signs and that his residence was not visible from Foster Road. 1 RP at 5. Littlefair testified that James Barresse also lived on his property.
¶ 8 The trial court admitted a map of Littlefair's property.[2] Littlefair testified that red metal stakes about four feet high with white tops and little markers that had a "PL" on them which stood for "property line" demarcated his south property line. 1 RP at 18. The markers were roughly 50 to 60 feet apart all the way down the road. On the southeast corner of Littlefair's property was a two-inch steel pipe cemented in concrete along with two metal red stakes with white tops on them that stood three to four feet high. The southeast corner also had two tree lines that Littlefair used to mark his property. Littlefair stated that the property east of his belonged to Longview Fiber.
¶ 9 On cross-examination, the State asked Littlefair whether the map adequately depicted his driveway. Littlefair responded that a revision to the map in 1988 failed to include the driveway and "just put in the road." 1 RP at 32. The State also asked whether Littlefair had any signs posted on the east or south sides of his property. Littlefair answered that he did not have any signs. He also conceded that he did not have any barrier to prevent people from crossing over his property line in the area that bordered the Longview Fiber property.
¶ 10 Littlefair called Detective Gonser. The detective was a member of the Clark/Skamania Drug Task Force and was familiar with the appearance and smell of controlled substances. The detective testified that he obtained a map from the assessor's office before going to Littlefair's property and called Longview Fiber to ask permission to go onto its property. He stated that he was acting on a tip from an informant that Littlefair had a couple of burn barrels with a bunch of stacked wood on top of them and that inside of the burn barrels police would find an underground marijuana grow.
¶ 11 Detective Gonser went down to the end of Foster Road where the road turned into a gravel road. There was a spur road off of the gravel road that took the detective onto Longview Fiber land. The detective testified that his location was south of Gordon Road. From that location, on two occasions, the detective and different officers walked north across the Longview Fiber land toward Gordon Road and Littlefair's property.
¶ 12 Littlefair asked the detective if he saw any corner stakes. The detective responded that he did not see any corner stakes so he used the assessor's map to help him in his investigation. Detective Gonser also testified that on all occasions while doing surveillance, it was after dark, he wore camouflage, and he approached Littlefair's property from the south in order to avoid detection. The detective stated he did not observe the tree line on either January 23 or December 27. The detective stated that on December 27, he was 20 feet west of the barrels when he smelled marijuana.
¶ 13 Littlefair asked the detective whether he had located the underground marijuana grow on January 23. The detective answered that he came across the area described by the informant and found two barrels. He then conducted a quick search of the area. Detective Gonser also testified that he sent a letter to the Skamania County Public Utilities District requesting Littlefair's usage records.
¶ 14 After Detective Gonser's testimony, Littlefair concluded his case. The State presented no witnesses. The court took a recess and viewed a videotape that Littlefair had made of his property. The court then made its oral ruling.
¶ 15 It first noted the undisputed facts of the case. It then stated that the disputed fact was whether or not Detective Gonser had reason to believe that he was on Littlefair's property and not Longview Fiber property. The court found that Detective Gonser did believe he was on Longview Fiber property. The court based its ruling on the fact that the assessor map the detective used did *363 not show the extension of Gordon Road. It also relied on the videotape it had viewed of Littlefair's property. The court further stated that the corner post located in the southeast corner was well hidden by foliage.
¶ 16 In addressing the Franks issue, the court ruled that a falsehood did exist in the affidavit but that Detective Gonser did not intentionally make the falsehood. The court also found that Littlefair did not have a reasonable expectation of privacy over the southeast corner of his property. The court denied the motion to suppress.
¶ 17 Littlefair pleaded guilty to manufacture of marijuana on October 17, 1996. The court entered a judgment and sentence on the same day. After an appeal concerning Littlefair's plea, we remanded the case to the trial court on July 18, 2003. State v. Littlefair, 112 Wash.App. 749, 51 P.3d 116 (2002), review denied, 149 Wash.2d 1020, 72 P.3d 761 (2003). In the new trial, the jury found Littlefair guilty on all counts.

I. Waiver of Issues on Appeal
¶ 18 The State argues that Littlefair has waived all of the assignments of error in his appeal because he did not raise them during his prior appeal, before the trial court during pretrial hearings, or by objecting at trial subsequent to the appeal and grant of a new trial. We disagree.
¶ 19 On appeal, an appellant may not raise for the first time an error predicated on evidence allegedly obtained from an illegal search. State v. Silvers, 70 Wash.2d 430, 432, 423 P.2d 539, cert. denied, 389 U.S. 871, 88 S.Ct. 156, 19 L.Ed.2d 152 (1967). However, under RAP 2.5(a)(3), an appellant may raise for the first time before this court a "`manifest error affecting a constitutional right.'" State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995) (quoting RAP 2.5(a)(3)). The underlying issue in this appeal is the trial court's failure to suppress evidence seized as the result of a bad search warrant. That issue does affect a constitutional right and thus, Littlefair has not waived the errors now before this court. RAP 2.5(a)(3); McFarland, 127 Wash.2d at 333, 899 P.2d 1251.

II. Findings of Fact
¶ 20 The trial court held a hearing to determine whether to suppress the evidence obtained from the execution of the warrant. The hearing also included a Franks issue because Detective Gonser stated that he was on Longview Fiber land when he smelled the growing marijuana. As a factual matter, the officers were not on Longview Fiber land, but were on Littlefair's property when they made the observations and odor identification that formed the basis for the search warrant.
Under [Franks] the Fourth Amendment requires a hearing at the request of the defendant when the defendant makes a substantial preliminary showing that misrepresentations were made deliberately or recklessly by the affiant in a search warrant affidavit, and the misstated information was material or relevant to the magistrate's determination of probable cause. "`[A]llegations of negligence or innocent mistake are insufficient.'" There must be allegations of deliberate falsehood or of a reckless disregard of the truth, accompanied by an offer of proof.
State v. Vickers, 148 Wash.2d 91, 114, 59 P.3d 58 (2002) (footnote omitted) (citing State v. Garrison, 118 Wash.2d 870, 872, 827 P.2d 1388 (1992) (quoting Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978))).
¶ 21 Littlefair raises three issues regarding the trial court's findings at the suppression hearing.[3] First, he contends that the trial court erred when it found that Detective Gonser and other officers believed they were on Longview Fiber property and that Detective Gonser's false statement in *364 the affidavit was not intentionally made or with reckless disregard for the truth. Second, he asserts the trial court erred when it found Detective Gonser complied with RCW 42.17.314. Finally, he argues that the trial court erred when it found he did not have a reasonable expectation of privacy on the southeast corner of his property. Br. of App. 34. We only address the issue regarding Littlefair's expectation of privacy because it is dispositive.
¶ 22 We review the trial court's denial of a motion to suppress by considering whether substantial evidence supports the challenged findings and whether those findings support the trial court's conclusions of law. State v. Ross, 106 Wash.App. 876, 880, 26 P.3d 298 (2001), review denied, 145 Wash.2d 1016, 41 P.3d 483 (2002). Substantial evidence is "a sufficient quantity of evidence . . . to persuade a fair-minded, rational person of the truth of the finding." State v. Hill, 123 Wash.2d 641, 644, 647, 870 P.2d 313 (1994). Unchallenged findings of fact become verities on appeal. Hill, 123 Wash.2d at 644, 870 P.2d 313.
¶ 23 Where a defendant argues an unconstitutional search, we analyze whether the defendant had a legitimate expectation of privacy in the area and whether society willingly recognizes that expectation as reasonable. State v. Rose, 128 Wash.2d 388, 392, 909 P.2d 280 (1996). A warrantless search is per se unreasonable unless it falls under a specific exception to the warrant requirement. State v. Turner, 114 Wash.App. 653, 657, 59 P.3d 711 (2002). The burden is on the State to establish such an exception and the exceptions are "`limited and narrowly drawn.'" Turner, 114 Wash.App. at 657, 59 P.3d 711 (quoting State v. Parker, 139 Wash.2d 486, 496, 987 P.2d 73 (1999)).
¶ 24 One such exception is the open-view doctrine. Rose, 128 Wash.2d at 392, 909 P.2d 280. The open-view doctrine holds that contraband that is viewed when an officer is standing in a lawful vantage point is not protected. State v. Neeley, 113 Wash.App. 100, 109, 52 P.3d 539 (2002). No search has occurred where an officer is lawfully present at a vantage point and detects something by using one or more of his or her senses. Neeley, 113 Wash.App. at 109, 52 P.3d 539 (quoting State v. Cardenas, 146 Wash.2d 400, 408, 47 P.3d 127, 57 P.3d 1156 (2002), cert. denied, 538 U.S. 912, 123 S.Ct. 1495, 155 L.Ed.2d 236 (2003)). State v. Seagull, 95 Wash.2d 898, 632 P.2d 44 (1981), is the definitive case that addresses open view.
¶ 25 Under the open view doctrine, detection by an officer who is lawfully present at the vantage point and able to detect something by utilization of one or more of his senses does not constitute a search within the meaning of the Fourth Amendment. Seagull, 95 Wash.2d at 901, 632 P.2d 44. Seagull concerned a search at a farmhouse in rural Clallam County. The principles set forth in it that are pertinent to this case are as follows: "[i]t is clear that police with legitimate business may enter areas of the curtilage which are impliedly open, such as access routes to the house." Seagull, 95 Wash.2d at 902, 632 P.2d 44 (footnote omitted). An officer with legitimate business, when acting in the same manner as a reasonably respectful citizen, is permitted to enter the curtilage areas of a private residence which are impliedly open, such as access routes to the house.
¶ 26 Our Supreme Court in State v. Ross, 141 Wash.2d 304, 4 P.3d 130 (2000), instructed us that, "[b]efore reaching the Seagull inquiry, however, the first requirement of the `open view' doctrine must be satisfied. That is: the officer must be conducting legitimate business when he enters the impliedly open areas of the curtilage." Ross, 141 Wash.2d at 313, 4 P.3d 130. The Supreme Court pointed out in Ross that the officers came onto the property in the early morning, in the dark to obtain evidence of a marijuana grow operation to obtain a search warrant. The officers in Ross had no intention of contacting the resident. Thus, they were not on the property legitimately and the Supreme Court suppressed the evidence. This case is similar. Here, the entry that produced the information for the search warrant took place in the dark with the officers in camouflage gear when they approached the property from the south to avoid detection.
*365 ¶ 27 As a general rule, warrantless searches are per se unreasonable. State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996). Warrantless searches and seizures may, however, be reasonable under "`a few "jealously and carefully drawn" exceptions.'" Hendrickson, 129 Wash.2d at 70, 917 P.2d 563 (quoting Arkansas v. Sanders, 442 U.S. 753, 759, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979)). The State bears the burden of showing that a warrantless search falls under an established exception. State v. Johnson, 128 Wash.2d 431, 451, 909 P.2d 293 (1996). There is no doubt that the officers in this case were on the curtilage of Littlefair's property when they discovered the buried container. Fourth Amendment protection of a citizen's house extends to its curtilage. See State v. Niedergang, 43 Wash.App. 656, 659, 719 P.2d 576 (1986).
¶ 28 We are to determine whether an officer has invaded a defendant's privacy based on the facts and circumstances of each case. Seagull, 95 Wash.2d at 903, 632 P.2d 44. Littlefair relies on State v. Thorson, 98 Wash.App. 528, 990 P.2d 446 (1999), review denied, 140 Wash.2d 1027, 10 P.3d 407 (2000), to support his proposition that he had a reasonable expectation of privacy on the southeast corner of his property. In Thorson, while executing a search warrant on the Gordon property located on Waldron Island in the San Juan Islands, a Seattle police officer walked across the property onto Thorson's property. Thorson, 98 Wash.App. at 530, 990 P.2d 446. The officer reached a clearing and realized he was no longer on the Gordon property. Thorson, 98 Wash.App. at 530, 990 P.2d 446. From the edge of the clearing, the officer saw a single marijuana plant growing out of a large barrel next to a greenhouse. Thorson, 98 Wash.App. at 530, 990 P.2d 446.
¶ 29 The area at issue in Thorson was heavily wooded. Thorson, 98 Wash.App. at 535, 990 P.2d 446. The barrel was not visible from any road, his driveway, or the boundary between the Thorson property and that of any of his neighbors. Thorson, 98 Wash.App. at 535, 990 P.2d 446. Division One held that the nature of Thorson's property was such that he had no reason to expect intrusion by strangers. Thorson, 98 Wash.App. at 535, 990 P.2d 446. The court further held that because Thorson had a legitimate expectation of privacy, the nature of the officers' presence depended on whether the footpath was impliedly a public access way. Thorson, 98 Wash.App. at 536, 990 P.2d 446. If so, and if it took the officers to the point where they viewed the barrel, then the officers had a right to be at the clearing when they made their observation. Thorson, 98 Wash.App. at 536, 990 P.2d 446. The court found that the evidence did not support that the island footpaths were for public use. Thorson, 98 Wash.App. at 536, 990 P.2d 446. Our case is analogous to Thorson.
¶ 30 Here, Detective Gonser received permission from Longview Fiber to be on its property. From Longview Fiber's land, the detective saw the barrels which hid the underground container. On December 27, when he smelled green growing marijuana, he was wrongfully on Littlefair's property. Specifically, he had no legitimate purpose to be there. He was unaware of his trespass because it was at night, he did not see any property markers, there was snow on the ground, and he had obtained an incorrect assessor's map.
¶ 31 The trial court found it was easy to mistake Littlefair's property for that of Longview Fiber. Additionally, the property markers on the southeast corner of Littlefair's property were subtle and not readily apparent during the day but especially at night. Further, the southeast corner of Littlefair's property did not contain signage intended to alert the public of his desire for privacy. The relevant question is whether Littlefair had an expectation of privacy.
¶ 32 We reiterate that Littlefair's parcel was only two acres. The boundary line of his property was a forest that Longview Fiber had harvested and replanted, but his parcel remained wooded. The State argued that somehow if the land was rural, there was a lesser expectation of privacy than if the property was in an urban setting because it is more difficult to ascertain property lines. But this rationale is counterintuitive; people move to rural areas to obtain more privacy. There is no diminution of expectation of privacy *366 because a person chooses to live in a rural area. Seagull itself dealt with a rural setting.
¶ 33 The State has the burden to demonstrate an exception to the requirement that it can search someone's property without a warrant. The exception claimed was that of "open view." Rose, 128 Wash.2d at 392, 909 P.2d 280. Whether the officer had difficulty in ascertaining the property lines is of no importance to the burden of the State to demonstrate an exception to the warrant requirement. The finding of the trial court would place the burden on the homeowner to demonstrate that they had given enough notice to deny the public access to their land. That would turn the Fourth Amendment on its head. The State is required to demonstrate a reason as to why it was on the defendant's property. There is no evidence that Littlefair's property was open to the public or that there was an open route from Longview Fiber's land onto Littlefair's property.
¶ 34 The court in Thorson held that the lack of clear boundary markers does not change the analysis. Thorson, 98 Wash.App. at 537, 990 P.2d 446. The question is not whether Detective Gonser made a mistake in good faith, but rather whether the detective "had a lawful basis for his presence in the specific location from which he spied something incriminating." Thorson, 98 Wash.App. at 538, 990 P.2d 446. The trial court essentially found that the officer had a good faith belief that he was not on Littlefair's property. We do not recognize a good faith exception to the exclusionary rule. State v. White, 97 Wash.2d 92, 107-08, 640 P.2d 1061 (1982).
¶ 35 "Only where there is some implied public access to private property does a police officer without a warrant have the right to intrude." Thorson, 98 Wash.App. at 540, 990 P.2d 446. Littlefair's property was located in a rural area, although there were no signs in the southeast corner of his property, there were other signs located on the property that made it clear that uninvited guests were not welcome. The sole purpose for Detective Gonser being on Littlefair's property was to look for marijuana. Additionally, the officers did not proceed on any public access through Littlefair's property, and the officers did not act in the same manner as a reasonably respectful citizen. There was not a legitimate purpose under the "open view" doctrine for the officers to have been on Littlefair's land; they were searching for information to support a search warrant. This constituted an unreasonable intrusion into Littlefair's privacy. We hold that the search was invalid under article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution.
¶ 36 Reversed with instructions to dismiss the convictions and vacate the judgment and sentence.
We concur: HOUGHTON, P.J., and VAN DEREN, J.
NOTES
[1] Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
[2] All the exhibits from the hearing were destroyed by order of the court in 1997.
[3] No findings or conclusions were prepared or submitted to this court. At the time of oral argument, the parties indicated that they were in the process of preparing them and asked if the findings they were preparing would be useful to us. We base our opinion on the record of the trial court at the hearing. Although the trial court did not enter written findings and conclusions after the hearing as required by CrR 3.6(b), the court's oral opinion and the findings contained in its order provide sufficient information for review. State v. Cruz, 88 Wash.App. 905, 907-08, 946 P.2d 1229 (1997); see State v. Radka, 120 Wash.App. 43, 83 P.3d 1038 (2004).