IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40405-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| GREGORIO DIAZ, | ) | |
| | ) | |
| Petitioner. | ) | |

MURPHY, J. — Gregorio Diaz appeals from (1) a trial court order denying suppression of evidence found by community custody officers (CCOs) following a routine home visit and (2) an order denying reconsideration. We affirm.

FACTS

At the time of the CCOs' search, Diaz's sentence prohibited him from owning, using, or possessing firearms or ammunition. Diaz's sentence also required him to submit to reasonable searches of his person, vehicle, residence, and personal property. During a search, Diaz's CCOs found a handgun and ammunition under a mattress in Diaz's bedroom. The State charged Diaz with unlawful possession of a firearm.

Diaz moved under CrR 3.6 to suppress the evidence found by his CCOs, and to dismiss the charge, arguing the evidence was obtained through an unlawful search. After

a hearing, the trial court denied the motion and entered an order that included the

following undisputed facts:

> 1.     On February 8, 2023, CCO [Tyler] Hall and CCO [Sean] Oliver arrived at the home of defendant Diaz to conduct a home visit. While CCO Oliver went to the front door to knock, CCO Hall stood outside on a public walkway where he could see into a window of Diaz' home. After CCO Oliver knocked and announced [the Department of Corrections] presence at the front door a second time, CCO Hall saw Diaz come into view through the window and move down a hall towards a bedroom and place something underneath a bed mattress. CCO Hall relayed his observations to CCO Oliver.
>
> 2.     After placing the unknown object underneath the bed mattress, defendant Dias went to the front door and opened it for CCO Oliver. CCO Oliver asked Diaz what he had placed underneath the bed mattress, to which Dias stated "nothing." CCO Oliver then directed Diaz to the bedroom where CCO Oliver saw a bulge on the edge of the middle part of the mattress so he instructed Diaz to lift the corner of the mattress. Upon Dias lifting the corner of the mattress, CCO Oliver saw a handgun and a box of ammunition sitting there. Diaz was immediately arrested and the weapon and ammunition collected as evidence by police.

Clerk's Papers (CP) at 71-72. From these facts, the trial court found that "Diaz's act of

concealing an unknown item at the beginning of DOC [Department of Corrections] home

visit constituted a reasonable suspicion of having committed the violation of hiding

contraband, allowing a DOC search of that area where the item was hidden." CP at 72.

Diaz unsuccessfully moved for reconsideration of the trial court's order.

     Under RAP 2.3(b)(1), a commissioner of this court granted Diaz's motion for

discretionary review of the orders denying his motion to suppress and for reconsideration.

ANALYSIS

Diaz argues the search conducted by the CCOs violated his right to privacy, and the trial court erred (1) in its interpretation of RCW 9.94A.631 when it held the search conducted without a reasonable suspicion of a probation violation was allowed, (2) in concluding the act of concealing an unknown item at the beginning of a home visit equated to a reasonable suspicion, and (3) when it concluded CCO Tyler Hall's observation of Diaz secreting an unknown item constituted reasonable suspicion.

## 1. Standard of review

"We review a trial court's denial of a motion to suppress to determine whether substantial evidence supports the findings of fact and whether those findings . . . support the conclusions of law." *State v. Boisselle*, 194 Wn.2d 1, 14, 448 P.3d 19 (2019). We may affirm the trial court on any ground supported by the record. *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004). Warrantless searches are presumptively unreasonable under article I, section 7 of the Washington Constitution, which provides greater privacy protections than the Fourth Amendment to the United States Constitution, requiring "'authority of law'" for any disturbance of private affairs. *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999) (quoting WASH. CONST. art. I, § 7). RCW 9.94A.631 provides such authority for CCOs to conduct warrantless searches of individuals on community custody if they have reasonable cause to believe a condition has been violated, but such searches must be narrowly tailored.

3

*2.      Legal framework for community custody searches*

Individuals on community custody have a diminished expectation of privacy due

to their supervised status, but this does not eliminate constitutional protections under

article I, section 7 of the Washington Constitution. *State v. Olsen*, 189 Wn.2d 118, 134,

399 P.3d 1141 (2017). RCW 9.94A.631(1) authorizes CCOs to conduct warrantless

searches without probable cause if they have "reasonable cause to believe" an offender

has violated a condition of their sentence. This standard reflects the state's interest in

rehabilitation and public safety. *State v. Jardinez*, 184 Wn. App. 518, 524, 338 P.3d 292

(2014); *State v. Reichert*, 158 Wn. App. 374, 387, 242 P.3d 44 (2010). Accordingly, "it is

constitutionally permissible for a CCO to search an individual based only on a 'well-

founded or reasonable suspicion of a probation violation,' rather than a warrant supported

by probable cause." *State v. Cornwell*, 190 Wn.2d 296, 302, 412 P.3d 1265 (2018)

(quoting *State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009)).

Article I, section 7, of our state constitution imposes strict limits on such searches,

requiring them to be narrowly tailored to the suspected violation to avoid becoming

general exploratory searches. *Olsen*, 189 Wn.2d at 134. The Washington Supreme Court

has further safeguarded these reduced privacy rights by requiring a direct "nexus"

between the search and the suspected violation. *Cornwell*, 190 Wn.2d at 303-04. In

*Cornwell*, the court held that searches of personal property must be linked to specific

facts suggesting a violation, rejecting broad intrusions even for those with diminished

privacy expectations. *Id.* at 304. This nexus ensures that probationers retain protected interests in their private affairs, balancing supervision with constitutional safeguards.

3.      *The CCO's observations through the sliding glass door were lawful*

Diaz argues that his privacy rights under article I, section 7 were violated. We disagree. The plain view doctrine permits observations from a lawful vantage point without constituting a search. *State v. Seagull*, 95 Wn.2d 898, 901-02, 632 P.2d 44 (1981); *see also State v. Littlefair*, 129 Wn. App. 330, 340, 119 P.3d 359 (2005). Here, CCO Tyler Hall was positioned near a fence, a location consistent with DOC protocol for monitoring potential exits or hazards during a routine home visit. The sliding glass door was unobstructed, and the observation occurred while Hall was performing his duties. Washington courts have refused to recognize a privacy interest in those areas of the curtilage that are impliedly open to the public. *See State v. Ross*, 141 Wn.2d 304, 312, 4 P.3d 130 (2000).

4.      *Reasonable cause and nexus to a suspected violation*

Diaz contends that the CCOs lacked reasonable cause to suspect a probation violation and that the mattress search lacked a nexus to any suspected violation. We disagree, guided by analogous precedents and the trial court's findings.

Reasonable cause under RCW 9.94A.631 requires specific, articulable facts supporting a belief in a violation, akin to reasonable suspicion in *Terry*[1] stops. *See State v. Johnson*, 8 Wn. App. 2d 728, 746, 440 P.3d 1032 (2019). The trial court found that Diaz's act of concealing an unknown item at the beginning of the DOC home visit constituted reasonable suspicion of having committed the violation of hiding contraband. Substantial evidence supports this: Diaz's furtive hiding in direct response to the knock and announce, which was observed in plain view, combined with his denial of "nothing" when asked what he hid under the mattress, CP at 72, provided specific facts suggesting concealment of contraband in violation of his community custody condition to not own firearms or ammunition.

This aligns with *State v. Pressley*, 64 Wn. App. 591, 597-98, 825 P.2d 749 (1992), where furtive movements (closing hand, walking away) upon seeing police, plus denial despite visible evidence, established reasonable suspicion of a drug transaction and justified a limited search. Similarly, in *State v. Glover*, 116 Wn.2d 509, 514-15, 806 P.2d 760 (1991), the defendant's furtive behavior and denial about what was in his hand created a reasonable suspicion for drug possession, leading to probable cause. Although *Pressley* and *Glover* involved *Terry* stops rather than community custody, the principles

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

of reasonable suspicion and nexus apply, especially given Diaz's diminished privacy expectations.

The CCOs' testimony that the item could have been legal or embarrassing does not negate reasonable cause, as suspicion need not be certainty. *Pressley*, 64 Wn. App. at 597. The knock and announce triggered the hiding, observed directly by CCO Hall, creating a temporal and behavioral nexus to a potential community custody violation—concealing a prohibited item, like a firearm. Under *Cornwell*, this nexus safeguards Diaz's reduced privacy rights by ensuring the search was not exploratory but directly linked to the suspected contraband violation. 190 Wn.2d at 303.

The mattress search had a direct nexus: it targeted the exact location of the observed concealment. This search was narrowly tailored, focusing on the suspected violation without general exploration. The trial court's finding that this concealment justified searching the area where the unknown item was hidden is supported and aligns with *Cornwell*'s safeguards, protecting privacy while enabling targeted supervision.

*5.      Suppression was not required*

The search was reasonable, the arrest was lawful, and the evidence was properly admitted. *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002).

CONCLUSION

The trial court did not err in denying Diaz's motion to suppress. The observation of CCO Tyler Hall when standing at a fence looking into the house through a sliding

7

glass window was lawful. Diaz's furtive movements after the knock and announce, as well as his subsequent denial of secreting something under the mattress, provided a reasonable suspicion of a community custody violation. Moreover, these facts support a nexus to a suspected violation such that the narrowly tailored search conformed to RCW 9.94A.631 and article I, section 7 of the Washington Constitution. We affirm the trial court's rulings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Staab, C.J.

_____
Lawrence-Berrey, J.