[No. 12404-5-III.    Division Three.    January 27, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. EILEEN JOY CHAUSSEE, *Appellant*.

*John A. Troberg,* for appellant.

*John G. Wetle, Prosecuting Attorney,* and *Pamela F. Payne, Deputy,* for respondent.

SWEENEY, A.C.J. — On stipulated facts, Eileen Joy Chaussee was convicted of the manufacture of a controlled substance, marijuana. RCW 69.50.401(a)(1). She contends the officers violated her Fourth Amendment rights by driving eight-tenths of a mile on a private road posted with "no trespassing" signs.[1] We affirm.

FACTS

On September 5, 1990, Inspector David Blackman and former Inspector Kenneth Meyer of the Stevens County Sheriff's Department were flying as marijuana spotters aboard a National Guard helicopter. Inspector Blackman had received an anonymous tip that marijuana was being grown above Grimm Road in the Summit Valley area of Stevens County. While flying over the area, Inspector Meyer observed a marijuana garden.[2] Photographs were taken. The marijuana garden was located inside a post and wire fenced area at the bottom of a small hill between two buildings.

---

[1] Counsel for Ms. Chaussee does not argue that the Washington State Constitution, article 1, section 7, provides greater protection to Ms. Chaussee. He asserts that the analysis under the federal and state constitutions is the same because the search in question involved an intrusion into the curtilage.

[2] Ms. Chaussee does not appeal the court's finding and holding relating to the flight path of the helicopter.

After the helicopter landed in Chewelah, Inspector Black-man and Herb Blanchard of the Stevens County Sheriff's Department Emergency Services drove to Grimm Road in an attempt to locate the marijuana garden. Inspector Blackman drove a sheriff's vehicle up the common access road and observed about nine "no hunting" and "no trespassing" signs. He passed through an open gate leading to Ms. Chaussee's residence.

Inspector Blackman knocked at the door of the residence and at a shop building. There was no response. From where he was standing, Inspector Blackman saw marijuana plants, 5 to 6 feet in height, growing in the garden. Mr. Blanchard and Inspector Blackman returned to their vehicle and ran a registration check on a vehicle parked at the residence. After being advised that the car was registered to Ms. Chaussee, Inspector Blackman requested a search warrant. Inspector Blackman and Mr. Blanchard waited in the sheriff's vehicle for the warrant to be issued and brought to the residence.

Within 20 minutes, Ms. Chaussee arrived home. Inspector Blackman asked if she owned the property; she said yes. He advised Ms. Chaussee of her constitutional rights and in-formed her that he had observed marijuana plants in the garden. He told her that he was in the process of applying for a search warrant. Ms. Chaussee invited the officers into her home. Following some general conversation, Ms. Chaussee consented to a search. Inspector Blackman, Mr. Blanchard and Ms. Chaussee went to the garden. Inspector Blackman harvested and seized about 20 marijuana plants. Ms. Chaus-see was charged with manufacture of a controlled substance, marijuana. RCW 69.50.401(a)(1).

At a CrR 3.5/3.6 hearing, Ms. Chaussee testified she had moved to the area for privacy and did not expect salesmen, the public or tourists to come onto the land uninvited. She said that the "no trespassing" signs had been put in place several years earlier by another property owner with whom she shares the access road. None of the signs are located on her property and she has no control over who uses the road. Ms. Chaussee stated that the road to her house leads into a

mowed area surrounded by trees. The shop building is on the other side of the driveway; the garden area is about three-fourths of an acre, fenced, and located about 50 to 60 feet from the shop building.

The court denied the motion to suppress, ruling that the officers did not need a search warrant before entering the curtilage. It noted that "the officers simply drove up to see if someone was home, no one was; they stopped their business and called for a warrant and were in the process of obtaining it when Ms. Chaussee appeared." The court concluded that "[t]here was no intrusive invasion of defendant's privacy" because the gate was open, there were no signs on Ms. Chaussee's property, the officers entered during daylight hours, the officers had approached by a common access route, and after determining no one was home, the officers returned to their vehicle and waited. According to the court, the marijuana garden was not within the curtilage.[3] Ms. Chaussee was found guilty on stipulated facts.

## DISCUSSION

Ms. Chaussee contends the officers violated her right to privacy and the court therefore erred in denying her motion to suppress. She argues the seizure of evidence followed an unreasonable search of a constitutionally protected area and therefore the evidence should be suppressed. *State v. Ridgway*, 57 Wn. App. 915, 790 P.2d 1263 (1990).

■ ■ Standard of Review. On review of a suppression motion, we make an independent evaluation of the evidence, allowing "great significance" to the findings; we defer to the trial court on issues of credibility. *State v. Mennegar*, 114

---

[3]The court stated:

"No, that's not in the curtilage, counsel. . . . That's too far . . . [Ms. Chaussee] has drawn on her demonstrative exhibit No. 15 the area that is covered by not only the house and the shop, but I think by her lawn mower or weed whacker or whatever she uses in order to kind of keep things beat down, and at most, that would be the curtilage. Then when you pass from the brush pile you go to a fence . . . and then you go beyond the fence some distance to an enclosed area that actually contains the garden where the marijuana was. Now, in terms of footage, I'm not clear. . . .

" . . . .

" . . . [I]t's beyond any maintained area."

Wn.2d 304, 309-10, 787 P.2d 1347 (1990); *State v. Hill*, 68 Wn. App. 300, 304, 842 P.2d 996, *review denied*, 121 Wn.2d 1020 (1993). We determine whether substantial evidence supports the findings of the trial court and whether those findings support the conclusions of law. *State v. Hagen*, 55 Wn. App. 494, 498, 781 P.2d 892 (1989). The court's suppression findings will not be disturbed on appeal if they are supported by substantial evidence. *State v. Hashman*, 46 Wn. App. 211, 217, 729 P.2d 651 (1986), *review denied*, 108 Wn.2d 1021 (1987).

■ Constitutional Protections. The fourth amendment to the United States Constitution protects an individual's "privacy interest".[4] For a search to fall within the proscription of the Fourth Amendment, the person "invoking its protection must claim state invasion of a justifiable, reasonable, or a legitimate expectation of privacy." *State v. Crandall*, 39 Wn. App. 849, 852, 697 P.2d 250 (citing *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967)), *review denied*, 103 Wn.2d 1036 (1985). That expectation raises two questions: (1) whether the individual by conduct has exhibited a subjective expectation of privacy; and (2) whether society is prepared to recognize that expectation as reasonable. *Crandall*, at 852.

■ Police officers on legitimate business may enter an area of curtilage which is impliedly open to the public, such as an access route to a house or a walkway leading to a residence. *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981); *State v. Ferro*, 64 Wn. App. 181, 183, 824 P.2d 500, *review denied*, 119 Wn.2d 1005 (1992). But a substantial or unreasonable departure from the area exceeds "the scope of the implied invitation and intrude[s] upon a constitutionally protected expectation of privacy." *Seagull*, at 903; *State v.*

---

[4]"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. 4.

*Daugherty,* 94 Wn.2d 263, 268-69, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981). The determination of whether an officer's presence amounts to an unconstitutional invasion of privacy must be based on the facts and circumstances of each case. *Seagull,* at 903.

In *State v. Ridgway, supra,* a tax assessor photographed what he believed to be marijuana plants on Mr. Ridgway's property. He gave the photographs to the sheriff. Mr. Ridgway's house was located at the end of a curving 200-yard driveway; it was not visible from the road — neighboring houses could not be seen from the property. The gate at the entrance of the driveway was closed and two dogs were positioned at the door of the house nearest the driveway. The deputies walked around the closed gate and circled to the far door of the house to avoid the dogs. At the far door, they observed potted marijuana plants.

The court held the

> undisputed physical facts of this case do not allow the inference that Ridgway opened his property to uninvited visitors. The house is located in an isolated setting, hidden from the road and from neighbors. The long driveway is blocked by a closed gate, demonstrating a subjective expectation of privacy in the area beyond the gate. . . . Moreover, barking guard dogs stationed at the nearest door warned uninvited visitors that they were not welcome. Indeed, the deputies were required to deviate from the direct route to the house to avoid the dogs.

*Ridgway,* at 918-19 (citing *State v. Daugherty, supra*). The court concluded the deputies unlawfully entered the curtilage of Mr. Ridgway's home.

*Ridgway* is distinguishable. The road leading to Ms. Chaussee's residence was a common access road used by several property owners. Ms. Chaussee had no control over who used the road. She testified that members of religious groups, hunters and delivery drivers have unexpectedly appeared on her property. When Inspector Blackman and Mr. Blanchard drove up the road, the gate to Ms. Chaussee's house was open; the officers' route was direct. There were no barking dogs. When Ms. Chaussee returned home, she invited the officers in and con-

sented to the search. Ms. Chaussee did not demonstrate "a justifiable, reasonable, or a legitimate expectation of privacy". *Crandall*, at 852.

■ Ms. Chaussee's argument that she has a legitimate and reasonable expectation of privacy based on the "no trespassing" signs is unpersuasive. A similar argument was recently rejected in *United States v. Traynor*, 990 F.2d 1153 (9th Cir. 1993). There, the United States Court of Appeals for the Ninth Circuit held "the presence of a 'No Trespassing' sign [did] not itself create a legitimate expectation of privacy." *Traynor*, at 1159 (citing *Oliver v. United States*, 466 U.S. 170, 182, 80 L. Ed. 2d 214, 104 S. Ct. 1735, 1743 (1984)). Similarly, in *State v. Vonhof*, 51 Wn. App. 33, 40, 751 P.2d 1221, *review denied*, 111 Wn.2d 1010 (1988), *cert. denied*, 488 U.S. 1008 (1989), the court held that the presence of "no trespassing" signs does not increase the constitutional level of privacy interests enjoyed by defendants.

Ms. Chaussee's reliance on *State v. Dixson*, 307 Or. 195, 766 P.2d 1015 (1988) is likewise misplaced. There, the Oregon Supreme Court affirmed the denial of a motion to suppress. In so doing, the court recognized that landowners may take steps, including the posting of "no trespassing" signs and the erection of high, sturdy fences, to keep out intruders. *Dixson*, at 211. Ms. Chaussee's efforts to prevent intrusion were inadequate. The "no trespassing" signs, on which she relies, were located on property belonging to her neighbors and had been put up years before she moved into the area. There were no high fences, closed gates, security devices or dogs calculated to put police or other intruders on notice of her expectation of privacy.

Moreover, Inspector Blackman and Mr. Blanchard did not depart from the areas impliedly open to the public. *See State v. Ferro, supra*. The conduct of the officers was reasonable. After there was no answer at Ms. Chaussee's residence, Inspector Blackman and Mr. Blanchard returned to their vehicle to wait for the issuance of a search warrant. When Ms. Chaussee returned home, she invited them in and consented to the search.

■ The protection of the Fourth Amendment extends to people in their "persons, houses, papers, and effects . . ."; but that protection is limited to the curtilage. *Oliver v. United States, supra.* Curtilage is the land immediately surrounding and associated with the home — that area associated with the intimate activity of a home and the privacies of life. *Hester v. United States*, 265 U.S. 57, 59, 68 L. Ed. 898, 44 S. Ct. 445, 446 (1924). The court concluded that the garden area, located about 50 to 60 feet from the shop building in an enclosed area behind brush piles, was not within the curtilage. The Fourth Amendment protection did not extend to the garden area.

Ms. Chaussee has not demonstrated a reasonable and legitimate subjective expectation of privacy. The court did not err in denying the motion to suppress; the conviction is affirmed.

MUNSON, J., and WARDELL, J. Pro Tem., concur.

Review denied at 124 Wn.2d 1008 (1994).