177 P.3d 139 (2008)
STATE of Washington, Respondent,
v.
Paul E. JESSON,[[1]] Appellant.
No. 25882-3-III.
Court of Appeals of Washington, Division 3.
January 29, 2008.
Susan Marie Gasch, Gasch Law Office, Spokane, WA, for Appellant.
Michael George Sandona, Attorney at Law, Republic, WA, for Respondent.
THOMPSON, J.[*]
¶ 1 Paul Jessen was arrested after the execution of a search warrant on his property revealed a marijuana grow operation and several firearms. The search warrant was issued on the basis of the observations of a police officer who entered Mr. Jessen's property to question him as a potential witness with information regarding a property crime. Mr. Jessen's property was located in a sparsely populated and heavily forested area which was marked with several "No Trespassing" and "Keep Out" signs. In order to access the property, the officer had to open a closed, but unlocked gate and travel along a rough, primitive driveway. Mr. Jessen moved to suppress the evidence seized arguing that he had a reasonable expectation of privacy in his property which was violated when the officer entered his property without permission. The trial court denied the motion finding that the officer was acting on legitimate police business and had limited his entry to an area impliedly open to the public. As such, the initial search was not unlawful. Because we find that Deputy Huntley did not have consent to be on the property, we reverse.

FACTS
¶ 2 On June 29, 2006, James Sigafoos, who owns property at 151 White Tail Flats Road east of Republic, Washington, discovered that a 20-foot extension ladder, assorted aluminum scrap, some gas cans, and a screen door frame had been stolen from his property. He drove to the upper part of his property where he found a white flat bed pickup hauling the missing items of personal property. He talked to the driver and another man. They told Mr. Sigafoos they were looking for "Paul" and that they were from Omak. Clerk's Papers (CP) at 104. They then drove off. Mr. Sigafoos knew Paul Jessen lived on the road just past his property.
¶ 3 Mr. Sigafoos promptly drove into Republic and to the Ferry County Sheriffs Office where he was interviewed by, and provided a statement for, Deputy William Huntley. Deputy Huntley then followed Mr. Sigafoos up to the Sigafoos property. Mr. Sigafoos explained further that Mr. Jessen lived up at the end of the road, that he had earlier talked to him before coming to the sheriffs office, and that Mr. Jessen told him that there had been some people up there earlier in the day. But Mr. Jessen gave Mr. Sigafoos a different description of the visiting vehicle.
¶ 4 Deputy Huntley then drove to Mr. Jessen's property. It was the middle of the day. The route took him 4½ miles west on SR 20 to Sage Road, which is a county dirt road. He then drove one mile south on Sage Road until he reached a private easement road. He had to drive one-half mile up the private easement road to reach Mr. Jessen's driveway. Approximately one-half mile up the driveway, Deputy Huntley encountered a closed gate. Mr. Jessen's residence was past the closed gate.
¶ 5 The Sage Road area is sparsely populated and heavily forested, the private easement *141 road is a primitive road, and Mr. Jessen's driveway is steep, poorly maintained and has severe ruts. The driveways off the private easement road are gated and are posted with "No Trespassing" or "Private Keep Out" signs. CP at 105.
¶ 6 The Jessen residence cannot be seen from Sage Road or from any of the neighboring properties. The gate at Mr. Jessen's property was posted with a "No Trespassing" sign and just beyond the gate was a "Keep Out" sign. CP at 105. The gate was closed but not locked when Deputy Huntley entered the property.
¶ 7 Deputy Huntley, on arriving at the Jessen residence, observed an old log structure, three pickups, and the residence. He parked in the driveway. As he stood in the driveway, he could see through the clear glass door of a greenhouse on his right. Through the door of the greenhouse, he observed six to eight, 6-inch to 12-inch growing marijuana plants in garden-type plastic grow pots. He knocked on the front door of the residence several times, but no one appeared to be home. He ran the license plate on a gray van parked in the driveway and it came back to Paul Jessen, 163 White Tail Lane, Republic, Washington. The visible house number was 163 White Tail Lane. As he returned to his patrol vehicle, he again could clearly see the growing marijuana plants. At no time did he leave the driveway or the front door area of the residence. He turned around and left back down the driveway. Deputy Huntley entered Mr. Jessen's property for the sole purpose of investigating the theftnot to look for marijuana.
¶ 8 Deputy Huntley provided his report, including his observation of the marijuana plants, to a detective with the department and a search warrant was obtained. The search warrant was executed and the police seized several firearms in the Jessen residence and evidence of a marijuana grow operation,
¶ 9 Mr. Jessen was charged with one count of manufacturing marijuana, one count of use of drug paraphernalia, and four counts of unlawful possession of a firearm by a felon. Mr. Jessen moved to suppress the evidence seized during the execution of the warrant. After a hearing on the motion, the trial court orally ruled that the motion was granted, but later reconsidered its decision and requested further briefing. Upon reviewing the additional briefing and arguments of counsel, the trial court reversed its ruling and denied the motion to suppress finding that, while Mr. Jessen had a subjective expectation of privacy, the police were conducting legitimate police business when the contraband was initially observed, and that the subsequent search was not unlawful.
¶ 10 The information was subsequently amended so that only one count of unlawful possession of a firearm remained. Mr. Jessen was then found guilty of that crime after a stipulated bench trial on the facts set forth above. He now appeals.

ANALYSIS
¶ 11 The issue here is whether the trial court erred in denying Mr. Jessen's motion to suppress when an officer attempting to contact Mr. Jessen as a potential witness to an alleged property crime entered his secluded, rural property through a closed gate marked with "No Trespassing" signs and subsequently observed a marijuana grow operation in plain view on the property.
¶ 12 "We review the denial of a motion to suppress by determining whether substantial evidence exists to support the trial court's findings of fact, and whether those findings support the trial court's conclusions of law." State v. Ross, 106 Wash. App. 876, 880, 26 P.3d 298 (2001), review denied, 145 Wash.2d 1016, 41 P.3d 483 (2002). Unchallenged findings are verities for purposes of appeal. Id. Mr. Jessen does not assign error to any of the trial court's findings of fact. Thus, this court must determine whether those findings support the court's conclusions of law. Conclusions of law are reviewed de novo. Id.
¶ 13 Warrantless searches are per se unreasonable under the Fourth Amendment and article I, section 7 of the Washington Constitution, unless they fall within a few specific and well-delineated exceptions. State v. Myers, 117 Wash.2d 332, 337, 815 *142 P.2d 761 (1991). Although residents maintain an expectation of privacy in the curtilage, or area contiguous with a home, "police with legitimate business may enter areas of the curtilage which are impliedly open, such as access routes to the house." State v. Seagull, 95 Wash.2d 898, 902, 632 P.2d 44 (1981) (footnote omitted). In so doing, however, an officer must conduct themselves as would a "reasonably respectful citizen." Id. at 902, 632 P.2d 44 (citing United States v. Vilhotti, 323 F.Supp. 425 (S.D.N.Y.), aff'd in part and rev'd in part, 452 F.2d 1186 (2d Cir.1971), cert. denied, 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972)). Under the open view doctrine, when an officer is lawfully present in an area, his detection of items by using one or more of his senses does not constitute a search within the meaning of the Fourth Amendment. Id. at 901, 632 P.2d 44.
¶ 14 Whether a portion of the curtilage is impliedly open to the public depends on the totality of the circumstances surrounding the deputies' entry. Id. at 902-03, 632 P.2d 44. An access route is impliedly open to the public, absent a clear indication that the owner does not expect uninvited visitors. See Ross, 141 Wash.2d at 312, 4 P.3d 130; see also State v. Hornback, 73 Wash.App. 738, 743, 871 P.2d 1075 (1994). "No Trespassing" signs alone do not create a legitimate expectation of privacy, especially without additional indicators of privacy expectations such as high fences, closed gates, security devices, or dogs. See State v. Chaussee, 72 Wash.App. 704, 710, 866 P.2d 643, review denied, 124 Wash2d 1008, 879 P.2d 292 (1994). Entry during daylight hours is more consistent with that of a reasonably respectful citizen. See Ross, 141 Wash.2d at 314, 4 P.3d 130.
¶ 15 Before we can determine if the curtilage areas at issue here were impliedly open, we must first address whether Deputy. Huntley was on legitimate police business when he entered the property. Ross, 141 Wash.2d at 313, 4 P.3d 130. Entering property to speak with occupants as part of an investigation of a possible crime is legitimate police business. Id. at 313-14, 4 P.3d 130; Seagull, 95 Wash.2d at 902 n. 1, 632 P.2d 44. Here, Deputy Huntley had been informed that Mr. Jessen might have information regarding the possible suspects in the theft of Mr. Sigafoos' property and he entered the property for the sole purpose of asking Mr. Jessen about the suspects. Thus, substantial evidence supports the trial court's finding that Deputy Huntley was engaged in legitimate police business.
¶ 16 Next, we must determine whether Mr. Jessen's driveway was impliedly open to the public. Mr. Jessen's property is located in a remote, sparsely populated and heavily forested area. And, while Deputy Huntley entered the property during daylight hours, he had to drive down a long and rough, primitive driveway to access Mr. Jessen's home. He also had to enter through a closed, but unlocked gate posted with a "No Trespassing" sign. Mr. Jessen's home was not visible from the gate; nor was it visible from his neighbors' property or any other public area. The driveway and property surrounding it were posted with "No Trespassing" and "Keep Out" signs.
¶ 17 Based on these facts, the court's finding that a reasonable, respectful citizen would believe that he could enter the property is not supported by substantial evidence. While the "No Trespassing" signs alone are not sufficient to remove implied consent to the access of the property via the driveway, the closed gate, the primitive road, the secluded location of the home in addition to the posted signs are sufficient.
¶ 18 In sum, under these facts, a reasonable, respectful citizen seeking to contact an occupant would not believe he had consent to enter the property. There were no exigent circumstances to justify entering the property and the police could have easily contacted Mr. Jessen to obtain permission to speak with him and/or enter the property. They did not do so. The motion to suppress should have been granted and the charges dismissed.
¶ 19 We reverse.
WE CONCUR: SWEENEY, C.J., and SCHULTHEIS, J.
NOTES
[1] Appellant's name is spelled "Jesson" in the Information and Amended Information; however, he signs his name spelled "Jessen." For purposes of this opinion the appellant's name is spelled "Jessen."
[*] Judge Philip J. Thompson is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.