IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86685-1-I |
| Appellant, | |
| v. | PUBLISHED OPINION |
| JOHN YELLOWCALF, | |
| Respondent. | |

BOWMAN, A.C.J. — Sedro-Woolley Police Department Officer Isaiah VanDam identified John Yellowcalf as the driver of a fleeing car after viewing a single Department of Licensing (DOL) photograph provided by another officer. The State charged Yellowcalf with attempting to elude a pursuing police vehicle. The trial court suppressed the out-of-court identification and dismissed the eluding charge, concluding the single-photo identification procedure violated Yellowcalf's due process rights. The State appeals. Because the trial court failed to analyze whether the suggestive identification procedure was necessary under the circumstances, we reverse and remand for further proceedings.[1]

FACTS

On August 10, 2023, the State charged Yellowcalf with attempting to elude a pursuing police vehicle. The State moved for an arrest warrant and attached to

---

[1] After oral argument, Yellowcalf notified this court that one of the judges hearing his case "may have represented him on a criminal matter in either Snohomish or Skagit County many years ago." Because none of the judges on this panel have ever represented Yellowcalf, we take no action on the notice.

the motion an affidavit from Officer VanDam, dated May 25, 2023.  In the affidavit, Officer VanDam said that on May 18, 2023, at around 9:04 p.m., he drove a marked police car eastbound on River Road in Sedro-Woolley.  While driving, he saw a car with license plate number AWZ4533 traveling in the opposite direction.  Officer VanDam "was able to get a good look on [sic] the driver's face and could see that the passenger seat was occupied by a white female with blonde hair."  He described the driver as "a male, either Hispanic or Tribal," with "short brown or black hair."

As Officer VanDam passed the car, it sped off "well over the posted 35 MPH zone."  Officer VanDam turned around and tried to catch up to the speeding car.  He saw the car run a stop sign and turn onto an adjoining street.  Officer VanDam activated his lights and siren but the car continued to speed away, making several turns.  Officer VanDam briefly lost sight of the car but then spotted it a couple of blocks later.  He used his radio to "call out" the direction the car was headed and its license plate number.  He continued to pursue the car but abandoned the chase after it sped up to 65 MPH in a 25 MPH zone and travelled north in a southbound lane.

Sedro-Woolley Police Department Officer Deion Whitt heard Officer VanDam's "call out" and told him over the "side radio" that "he knew who [the] eluding suspect may [be]."  Officer Whitt sent Officer VanDam a DOL photo of Yellowcalf.  Officer VanDam confirmed from the photo that Yellowcalf was the driver of the fleeing car.

On January 12, 2024, Yellowcalf moved to suppress Officer VanDam's single-photo identification.  He argued that the police used an "impermissibly

2

suggestive and unreliable" identification procedure in violation of Yellowcalf's due process rights under the Fourteenth Amendment to the United States Constitution. The State opposed the motion. In support, it attached to its response a supplemental report from Officer VanDam, dated January 19, 2024.

In the January 19 report, Officer VanDam claimed that he was patrolling the area of River Road near a boat launch, "entering the license plates" of cars parked in the area because that section of the roadway "is a common place where drugs are sold and bought, stolen vehicles are recovered, prostitution has occurred, and where it just seems that people with warrants seem to sit." He then came across a car parked in the area and saw a "Hispanic or Tribal" male in his "mid 30's to mid 40's" standing next to the open driver's side door, smoking a cigarette. He said the male "looked directly at me and my patrol car," then turned away and threw his cigarette into the river. The man then got into the car and drove away in the opposite direction, appearing to travel at a "faster speed than the posted speed limit of 25 MPH."[2] Officer VanDam then "did a U-Turn" and followed the car westbound on River Road.

On March 5, 2024, the trial court heard Yellowcalf's motion to suppress. At the hearing, Officer VanDam testified consistently with his January 19 supplemental report. And he identified Yellowcalf in court as the person driving the car that sped away from him. On cross-examination, Yellowcalf used VanDam's May 25 affidavit to impeach his testimony. He pointed out that in the May affidavit, Officer VanDam said he first saw the driver of the other car

---

[2] We note that in his May 25, 2023 affidavit, Officer VanDam said the posted speed limit was 35 MPH.

"driving" west on River Road in the opposite direction of his patrol car, not standing outside a "parked" car, smoking a cigarette.

Yellowcalf also called Dr. Geoffrey Loftus as an expert witness. Dr. Loftus, an experimental psychologist who studies perception and memory, testified about the dangers of eyewitness misidentification. He explained that single-photo identifications are "intrinsically unreliable." And he opined that the circumstances of Yellowcalf's arrest did not support a reliable identification.

Further, Dr. Loftus found Office VanDam's two reports "contradictory." And he explained that "if a witness makes two contradictory statements about some event that they experienced, then the first account is more likely to be accurate than the second account." So, he assumed that Officer VanDam's May 25, 2023 affidavit was accurate and that his January 19, 2024 supplemental report was not. Looking at the May 25 affidavit, Dr. Loftus noted that Officer VanDam's attention was divided among driving, typing the license plate number, and trying to see the car's occupants during the few seconds the two drove by each other. And he concluded that those circumstances coupled with "a showup procedure that is itself intrinsically unreliable" tainted Officer VanDam's identification of Yellowcalf.

The trial court granted Yellowcalf's motion to suppress the identification. In its findings of fact and conclusions of law, it concluded that the identification procedure was "highly suggestive" and that the circumstances surrounding the identification were "unreliable."[3] In support of its conclusion, it found that Officer

---

[3] The court also found that it was dusk at the time of the incident, "render[ing] the opportunity to view unreliable."

VanDam's conflicting reports "leave unanswered questions" as to his opportunity to view the suspect and "raise concerns over the credibility of his testimony about this specific incident." But it explained that "what is clear" is that Officer VanDam was doing other tasks at the same time he saw the car drive by him and that he had no specific reason to heed the driver's identity. So, the identification procedure created a substantial likelihood of irreparable misidentification in violation of Yellowcalf's due process rights.

The case proceeded to a bench trial, and Yellowcalf moved in limine to also exclude any in-court identification of him as the driver. He argued that such an identification would be tainted by the unlawful out-of-court single-photo identification procedure. The trial court granted the motion and dismissed the eluding charge with prejudice.

The State appeals.

ANALYSIS

The State argues the trial court erred by excluding Officer VanDam's out-of-court identification because Yellowcalf failed to show that the single-photo identification procedure was both suggestive and unnecessary. We agree.

We review a trial court's decision on whether to admit an out-of-court identification for abuse of discretion. *State v. Kinard*, 109 Wn. App. 428, 432, 36 P.3d 573 (2001). A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). An order is manifestly unreasonable if it rests on an incorrect legal standard. *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

We review a trial court's findings to determine whether they are supported by substantial evidence. *State v. Chaussee*, 72 Wn. App. 704, 708, 866 P.2d 643 (1994). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the declared premise. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014), *abrogated on other grounds by State v. Roberts*, 5 Wn.3d 222, 572 P.3d 1191 (2025). We treat unchallenged findings of fact as verities on appeal. *Id*. And we defer to the trial court's determination of weight and credibility of the evidence. *See In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 364, 256 P.3d 277 (2011). We review conclusions of law de novo. *State v. Levy,* 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).

Courts have long recognized the potential unreliability of eyewitness testimony and the risks posed by suggestive police procedures. *State v. Derri*, 199 Wn.2d 658, 673, 511 P.3d 1267 (2022). To determine whether an identification procedure violates the Fourteenth Amendment, courts employ the two-part test under *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). *Id.* at 673-74. First, the defendant must show that the identification procedure was both suggestive and unnecessary.[4] *Id.* at 673; *see*

---

[4] Washington courts have used the term "impermissibly suggestive" interchangeably with "unnecessarily suggestive." *Derri*, 199 Wn.2d at 676 n.14. And the United States Supreme Court has referred to an unnecessarily suggestive procedure as "improper police conduct" invoking due process protection. *See Perry v. New Hampshire*, 565 U.S. 228, 241, 132 S. Ct. 716, 181 L. Ed. 2d 694 (2012). But the use of these terms neither adds to nor subtracts from the requirements to satisfy the first step of the *Brathwaite* test—that the defendant must show the identification procedure was both suggestive and unnecessary. *See Derri*, 199 Wn.2d at 674; *Brathwaite*, 432 U.S. at 114.

*Brathwaite*, 432 U.S. at 114.  If the defendant fails to make such a showing, the inquiry ends.  *State v. Vickers*, 148 Wn.2d 91, 118, 59 P.3d 58 (2002).

Still, even if the defendant shows the identification procedure is both suggestive and unnecessary, suppression is not automatic.  *See Derri*, 199 Wn.2d at 674-75.  Instead, the court must analyze the second step under *Brathwaite*—the reliability of the identification under the circumstances.  *Id.*; *see Brathwaite*, 432 U.S. at 114.  It must assess case-by-case whether the identification process created a substantial likelihood of irreparable misidentification.  *Derri*, 199 Wn.2d at 674.  In doing so, the court considers the five factors set out in *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).  *Brathwaite*, 432 U.S. at 114.  Those factors include (1) the opportunity of the witness to view the person at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the person, (4) the level of certainty demonstrated at the procedure, and (5) the time between the crime and the identification procedure.  *Biggers*, 409 U.S. at 199-200; *see also Brathwaite*, 432 U.S. at 114.

1.  Suggestive and Unnecessary

Here, the trial court concluded that the single-photograph identification procedure used by Officer VanDam was suggestive.  And the parties do not challenge that conclusion.  Indeed, our Supreme Court has determined that single-photo identifications, like all single-suspect identifications, are " 'highly

suggestive.' "[5] *Derri*, 199 Wn.2d at 685 (quoting *Mason v. United States*, 414 F.2d 1176, 1182 (D.C. Cir. 1969)). And Dr. Loftus testified that the procedure used here was "intrinsically unreliable" because it was susceptible to creating expectations and motivating a positive identification. So, the trial court did not err by reaching that conclusion.

But even inherently suggestive procedures may be necessary under exigent circumstances. *See Brathwaite*, 432 U.S. at 109; *Stovall v. Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). For example, we have held that single-suspect showup identifications may be admissible despite their suggestive nature. *State v. Booth*, 36 Wn. App. 66, 70-71, 671 P.2d 1218 (1983). The primary reasons for a showup identification are the need for a quick resolution to a crime when a suspect may still be in the area, the necessity for fresh and accurate information from the witness, and the possible exoneration of the suspect. *State v. Jaquez*, 105 Wn. App. 699, 713, 20 P.3d 1035 (2001). So, we have held that showup identifications may be admissible as necessary under exigent circumstances when they occur shortly after a crime is committed and during a prompt search for a suspect. *State v. Kraus*, 21 Wn. App. 388, 391-92, 584 P.2d 946 (1978).

---

[5] Yellowcalf cites *State v. Maupin*, 63 Wn. App. 887, 822 P.2d 355 (1992), a Division Three case, for the proposition that single-photo identification procedures are unduly suggestive as a matter of law. The *Maupin* court does conclude that "presentation of a single photograph is, as a matter of law, impermissibly suggestive." *Id.* at 896. But it cites *Brathwaite* and *State v. Hendrix*, 50 Wn. App. 510, 749 P.2d 210 (1988), in support of that proposition. And neither case reaches such a conclusion. As a result, we decline to follow *Maupin*.

Here, Officer Whitt employed a procedure similar to a single-suspect showup. Shortly after the fleeing car evaded Officer VanDam, Officer Whitt found a DOL photo that he believed may identify the driver of the car and showed it to Officer VanDam. But the parties did not argue whether the suggestive procedure was necessary under the circumstances, nor did the trial court engage in such an analysis. And we decline to do so in the first instance.

We reverse the order suppressing Officer VanDam's out-of-court identification and remand for the trial court to determine whether the suggestive identification procedure used here was necessary under the circumstances.

2. Reliability of the Identification

Because we reverse and remand under the first step of the *Brathwaite* analysis, we need not reach the State's argument that the trial court erred by concluding that the single-photo identification procedure created "a very substantial likelihood of irreparable" misidentification. But, in the interest of judicial economy, we sometimes address issues beyond those that are dispositive if their resolution would assist the trial court on remand. *State v. Orozco*, 19 Wn. App. 2d 367, 378 n.4, 496 P.3d 1215 (2021). Here, should the trial court determine on remand that the single-photo identification procedure was unnecessary, it would help the trial court and meet the ends of judicial economy to avoid a second evidentiary hearing to analyze the second step of the *Brathwaite* test.[6] *See Brathwaite*, 432 U.S. at 114. As a result, we address the

---

[6] At oral argument, the State agreed that judicial economy would be served by resolving its challenge to the second step of the *Brathwaite* test should we reverse on step one.

trial court's application of the five *Biggers* factors and its conclusion that they weigh against reliability of Officer VanDam's identification.

### I.  Opportunity to View

The trial court concluded that "conflicting reports leave unanswered questions to what Officer VanDam's opportunity was to view the suspect and raise concerns over the credibility of his testimony."  *See Biggers*, 409 U.S. at 199.  We agree.

As an initial matter, the State challenges the trial court's finding that "Officer VanDam and the vehicle passed each other while driving."  At the evidentiary hearing, Officer VanDam testified that he observed Yellowcalf for 5 to 10 seconds while Yellowcalf stood near his parked car before driving away from him.  On cross-examination, Yellowcalf impeached Officer VanDam, pointing out that he wrote in his May 25 affidavit that he first saw Yellowcalf driving his car in "the opposite direction on" River Road.  But impeachment evidence is offered solely to show the witness is not truthful.  *State v. Burke*, 163 Wn.2d 204, 219, 181 P.3d 1 (2008).  Such evidence may not be used to argue that the facts in the prior statement are substantively true.  *Id.*  So, the trial court's finding is not supported by substantial evidence.

Still, the trial court properly concluded that Officer VanDam gave conflicting versions of what occurred.  And it expressed concern that the conflicting reports were unexplained[7] and left "unanswered questions [as] to what

---

[7] The State says that this finding is also unsupported by substantial evidence.  It argues that Officer VanDam explained the discrepancies in his reports.  But the record shows that Officer VanDam explained only why an officer may create a supplemental report, not why the information in his reports conflicts.

Officer VanDam's opportunity was to view the suspect." The court determined that these unanswered questions and conflicting reports raised concerns about "the credibility of [Officer VanDam's] testimony about this specific incident." And we leave credibility determinations, including those made at pretrial hearings, solely for the trier of fact. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990), *abrogated on other grounds by State v. Crossguns*, 199 Wn.2d 282, 505 P.3d 529 (2022).

The trial court's findings support its conclusion that conflicting evidence left unanswered questions about Officer VanDam's ability to observe, and it was tenable for the court to determine that this factor weighed against reliability.

II. Attention

As to the second factor, the trial court concluded that "the witness's degree of attention is also unclear" due to the conflicting reports. *See Biggers*, 409 U.S. at 199. But it found that when Officer VanDam saw the driver of the other car, he was driving his cruiser, reading the license plate, entering it into his computer, and observing the car's occupants. So, no matter which version of events occurred, Officer VanDam had only a short time to view the suspect while performing several other tasks and had no specific reason to track the suspect's identity.

Citing *State v. Ramires*, 109 Wn. App. 749, 762, 37 P.3d 343 (2002), the State argues the trial court failed to adequately consider "Officer VanDam's avowed alertness, as a result of his training and experience," when assessing his level of attention. In *Ramires*, the officer made a routine traffic stop and approached the car on foot to speak with the driver. *Id.* at 754. As the officer

11

reached the driver's side window with his flashlight, he stopped and saw the driver grin before displaying a gun and shooting the officer twice in the chest. *Id*. The court concluded that this factor favored reliability because the officer shined his flashlight at the driver's face, was alert as he approached the car, and was "trained and experienced in making these observations." *Id*. at 762.

This case is different from *Ramires*. Here, Officer VanDam was not engaged in a routine traffic stop and was not focused solely on the driver. Nor was he a few feet away from the driver, shining a flashlight toward his face. And, unlike the officer in *Ramires*, there were credibility concerns about Officer VanDam's testimony about the incident. So, the trial court did not err by concluding that this factor weighs against the reliability of Officer VanDam's identification.

### III. Accuracy of the Previous Description

The trial court concluded that this factor also weighed against reliability of the single-photo identification because Officer VanDam gave only a vague description of the driver. *See Biggers*, 409 U.S. at 199. We agree.

In his May 25, 2023 affidavit, Officer VanDam described the driver simply as "male, either Hispanic or Tribal," with "short brown or black hair." In his January 19, 2024 supplemental report, Officer VanDam elaborated that the driver was "a Hispanic or Tribal male that appeared to be in his mid 30's or mid 40's." The trial court concluded that these descriptions were "very vague" and commented that it is "notable in what is missing," such as "height, weight, build, clothing description, or any distinguishing physical features."

12

The State acknowledges that Officer VanDam's descriptions were "wanting for detail" but argues that they were accurate nonetheless and should favor reliability. But the State cites no authority in support of its argument that a "vague description which contains zero inaccuracies . . . does not logically *detract* from the reliability of [a witness'] identification." We assume it found none. *See* RAP 10.3(a)(6) (appellant brief should include citations to legal authority); *see also Carter v. Dep't of Soc. & Health Servs.*, 26 Wn. App. 2d 299, 317, 526 P.3d 874 (2023) (When "a party cites no authorities supporting its argument, we may assume that counsel searched diligently and found none.").

In any event, cases applying this factor have pointed to much more specific descriptions. For example, in *Brathwaite*, the court found this factor supported reliability because the description included the defendant's "race, his height, his build, the color and style of his hair, and the high cheekbone facial feature." 432 U.S. at 115. Similarly, in *Derri*, we found this factor supported reliability because "[a]ll three witnesses provided a reasonably detailed description of the robber." 199 Wn.2d at 687. The trial court did not err by concluding this factor weighed against reliability.

IV. <u>Level of Certainty and Time Between the Crime and Identification</u>

Finally, the trial court concluded that both remaining factors supported reliability. *See Biggers*, 409 U.S. at 199-200. It found that Officer VanDam "appeared quite certain about his identification," which occurred "a short time" after seeing the driver of the car. Neither party challenges these conclusions.

Because the trial court properly applied the five *Biggers* factors in analyzing the second step of the *Brathwaite* test and its conclusions are

supported by its findings of fact, the trial court did not err by determining that the single-photo identification procedure used here created "a very substantial likelihood of irreparable" misidentification.

We reverse and remand for the trial court to determine whether the suggestive identification procedure used to identify Yellowcalf was necessary under the circumstances.[8]

, ACJ

WE CONCUR:

Birk, J.                              Dwyer, J.

---

[8] Because we conclude that the trial court erred by suppressing Yellowcalf's out-of-court identification, we do not reach the State's challenge to the suppression of the tainted in-court identification.

14